William TRERICE, et al.,
Plaintiff-Appellant,

v.

Dan A. PEDERSEN, Captain, U.S. Navy, Commanding Officer, USS Ranger, et al., Defendants-Appellees.

No. 84-5789.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 11, 1985.*

Decided Aug. 28, 1985.

---

* The panel is unanimously of the opinion that oral argument is not required in this case. Fed.

R.App.P. 34(a).

[redacted]

Peter J. Kelley, Ann Arbor, Mich., for plaintiff-appellant.

Kathryn A. Snyder, Asst. U.S. Atty., San Diego, Cal., for defendants-appellees.

[redacted]

Before NELSON, CANBY, and HALL, Circuit Judges.

NELSON, Circuit Judge:

William Trerice, father and personal representative for the estate of Paul Anthony Trerice, appeals from the district court's dismissal of his action for failure to state a claim upon which relief can be granted. Trerice's son Paul, an enlisted member of the Navy, died while serving at sea aboard the USS Ranger, and Trerice filed suit seeking damages from defendant-appellee Lee Cargill, a Navy Captain and the Executive Officer of the USS Ranger, for alleged common law torts and deprivations of his son's constitutional and civil rights which are claimed to have led to Paul's death. Trerice now contends that the district court erred in dismissing his claims, which arose under the Constitution, civil rights statutes 42 U.S.C. §§ 1985(3) & 1986, and common law. We do not find appellant's arguments persuasive, and affirm the judgment of the district court dismissing the action.

## FACTUAL AND PROCEDURAL BACKGROUND

Paul Anthony Trerice, an enlisted member of the United States Navy, died on April 14, 1981, while serving at sea aboard the USS Ranger. Lee Cargill was at that time a Navy Captain and Executive Officer of the USS Ranger. The complaint alleges that, in the days prior to Paul Trerice's death, Cargill and eight other members of the Navy conspired to harm decedent and

> without just cause or excuse assaulted, battered and required excessive physical exercise of Paul Anthony Trerice resulting in his death from heat prostration and heart failure, or ... knowing that such tortious acts were about to be committed, and having the power and duty to prevent the commission of same, neglected and refused to do so, although by reasonable diligence they could have done so.

Paul's father, William Trerice, filed a complaint for monetary damages on April 11, 1983, as personal representative for the estate of his deceased son. Of the nine named defendants, only Lee Cargill was ever served with the complaint, and so appeared as the lone defendant below and is the only appellee in the current proceedings. On Cargill's motion, pursuant to

Fed.R.Civ.P. 12(b)(6), to dismiss for failure to state a claim upon which relief can be granted, and after briefing by both parties, the district court dismissed Trerice's complaint on February 29, 1984. On March 28, Trerice filed a timely notice of appeal from this final decision of the district court.

## ISSUES PRESENTED

Did the district court properly dismiss Trerice's complaint, which included claims for relief under (I) the federal Constitution, (II) civil rights statute 42 U.S.C. § 1985(3)[1], (III) civil rights statute 42 U.S.C. § 1986[2], and (IV) the common law of torts, for failure to state any claim upon which relief can be granted?

## STANDARD OF REVIEW

██ The district court's ruling on the motion to dismiss for failure to state a claim upon which relief can be granted involves questions of law and is reviewable *de novo. E.g., Alonzo v. ACF Property Management, Inc.,* 643 F.2d 578, 579 (9th Cir.1981).

## DISCUSSION

██ The district court rested its order dismissing the action upon the doctrine of "intramilitary immunity." However, we may affirm the district court's ruling on any basis presented by the record. *E.g., Mollnow v. Carlton,* 716 F.2d 627, 628 n. 1 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984).

## I. TRERICE'S CLAIMS ARISING DIRECTLY UNDER THE CONSTITUTION

Trerice filed suit seeking damages on account of actions which allegedly violated his son's constitutional rights. Trerice's constitutional claims were properly dismissed because (1) no private cause of action under the Constitution is available to him, and (2) even were an appropriate cause of action available, the military decisions of which he complains are not subject to judicial review.

### A. *The Existence of a Cause of Action*

██ A cause of action in monetary damages against individual federal officials for constitutional infringements exists by virtue of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

---

**1.** 42 U.S.C. § 1985(3) provides, in relevant part, that

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**2.** 42 U.S.C. § 1986 provides that

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

(1971), and its progeny. A *Bivens*-type action for damages will not lie, however, when "special factors counselling hesitation" are present. *Id.* at 396, 91 S.Ct. at 2005, *quoted in Chappell v. Wallace,* 462 U.S. 296, 298, 103 S.Ct. 2362, 2364, 76 L.Ed.2d 586 (1983).

The Supreme Court, in *Chappell,* concluded that

> the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute "special factors" which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers.

*Id.* at 304, 103 S.Ct. at 2367. *Chappell* involved a suit by Navy enlisted men against their superior officers for alleged racially discriminatory conduct. The Court's broad holding there, that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations," *id.* at 305, 103 S.Ct. at 2368, raises an insuperable obstacle to Trerice's constitutional claims in the present case.

Trerice, in his brief, argues that his constitutional claim falls within the *Chappell* doctrine's "acknowledged exception" for particularly extreme, as opposed to "garden-variety," constitutional violations. However, *Chappell* involved allegations of discriminatory conduct which included the imposition of "penalties of unusual severity," 462 U.S. at 297, 103 S.Ct. at 2364, and so is factually quite similar to the present case.

But a more fundamental flaw in Trerice's argument is that there exists no such exception as he posits to the broad rule of *Chappell.* He misreads the assertion in the *Chappell* opinion that

> This Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service. [Citations.]

*Id.* at 304, 103 S.Ct. at 2367. This statement indicates merely that the *Chappell* Court did not intend to preclude all suits by military personnel arising out of constitutional violations; a non-*Bivens,* congressionally-authorized statutory cause of action for damages against superior officers might lie, as might other constitutional claims, if they are not directed at individual superior officers.

We have recently endorsed a broad reading of *Chappell* in this Circuit, in a decision which affirmed the dismissal of a former Air Force pilot's *Bivens* claims against his erstwhile commanding officers. *Mollnow v. Carlton,* 716 F.2d 627, 629–30 & n. 4 (9th Cir.1983) ("we believe the Court necessarily imposed a *per se* prohibition on the filing of *Bivens*-type actions by servicemen against their superiors"), *cert. denied,* —— U.S. ——, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984).

### B. *Reviewability*

██ A second, independent ground for proper dismissal of Trerice's constitutional claims is provided by the fact that the military decisions upon which his complaint focuses are not subject to judicial review, under the doctrine of *Wallace v. Chappell,* 661 F.2d 729, 731–34 (9th Cir.1981), *rev'd on other grounds,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). There, we adopted, "at least where constitutional claims are asserted," *id.* at 733, a version of the Fifth Circuit's test of reviewability of military decisions as enunciated in *Mindes v. Seaman,* 453 F.2d 197, 201–02 (5th Cir.1971). We have since reaffirmed these principles in several decisions written after the Supreme Court's reversal of *Wallace. See Helm v. State of California,* 722 F.2d 507, 509–10 (9th Cir.1983); *Watkins v. United States Army,* 721 F.2d 687, 690 (9th Cir.1983); *Gonzalez v. Department of Army,* 718 F.2d 926, 929–30 (9th Cir.1983).

Trerice's constitutional claims fail to satisfy at least one requirement of this test, in that they lack any allegation of exhaustion of intraservice remedies, and so were properly dismissed.

## II. THE 42 U.S.C. § 1985(3) CLAIM

Trerice's 42 U.S.C. § 1985(3) claim is deficient in at least two respects, and so was properly dismissed.

The Supreme Court in *Chappell v. Wallace* left open the possibility that a cause of action in monetary damages does not exist under section 1985(3) for military personnel against their superior officers for injuries sustained in the line of duty, for reasons similar to those governing the blanket prohibition of *Bivens*-type actions in such circumstances. 462 U.S. at 305 n. 3, 103 S.Ct. at 2368 n. 3. Indeed, we have since applied the *Chappell* reasoning to prohibit suits by military personnel against their superiors under 42 U.S.C. § 1985(1), although we did not reach that issue with respect to section 1985(3). *Mollnow v. Carlton*, 716 F.2d at 630–32.

■ We choose not to resolve that issue in the present case, however, because there exist independent reasons justifying the dismissal of Trerice's section 1985(3) claim, even assuming *arguendo* that the requisite cause of action exists under the statute. First, the allegedly injurious military decisions of which he complains are not subject to judicial review under *Wallace v. Chappell*, 661 F.2d at 731–34 & n. 5. As with Trerice's constitutional claims, the failure to allege exhaustion of intraservice remedies itself provides sufficient ground for the dismissal of the section 1985(3) claim.

■ Alternatively, Trerice's section 1985(3) claim is vulnerable to a motion to dismiss because his complaint lacks a sufficient allegation that Cargill's conduct was motivated by a racial or perhaps otherwise class-based, invidiously discriminatory animus. Such animus constitutes an essential element of a cause of action under section 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). This Circuit has abided by the principle of *Griffin*, and we have found a failure to state a claim upon which relief can be granted where there has been an insufficient allegation of the requisite animus. *See Mollnow*, 716 F.2d at 628; *Scott v. Rosenberg*, 702 F.2d 1263, 1270 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984); *DeSantis v. Pacific Tel. and Tel. Co.*, 608 F.2d 327, 332–33 (9th Cir.1979). Moreover, the

Supreme Court has recently stated that *Griffin* represents "the authoritative construction" of section 1985(3). *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 835, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983).

Trerice, apparently aware of *Griffin*, does allege in his complaint that Cargill was "motivated by discriminatory animus with gross disregard for the rights of Paul Anthony Trerice." However, there is nowhere any allegation of a *class-based* animus, even assuming that nonracial animus would suffice for purposes of section 1985(3). Any wrongful action directed at even a single individual can be said to be "motivated by discriminatory animus"; as the law now stands, however,

> the intended victims must be victims not because of any personal malice … toward them, but because of their membership in or affiliation with a particular class. [Citations.] Moreover, the class must exist independently of the defendants' actions; that is, it cannot be defined simply as the group of victims of the tortious action. [Citations.]

*Scott*, 463 U.S. at 850, 103 S.Ct. at 3366–67 (Blackmun, J., dissenting). Trerice's complaint fails this test. His complaint does not allege the requisite animus, nor does it contain any factual allegations from which a class-based animus could be inferred.

Even accepting Trerice's assertion, in his response brief to Cargill's motion to dismiss, that his deceased son was "a member of a protected class, military prisoners" whom Cargill "had commonly discriminated against," we do not find Trerice's argument persuasive. Our cases apply a standard which the class of military prisoners apparently does not satisfy. *See DeSantis*, 608 F.2d at 333 (in denying section 1985(3) protection to homosexuals, court stated that "we may not uproot § 1985(3) from the principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights"); *accord, Nakao v. Rushen*, 542 F.Supp. 856,

859 (N.D.Cal.1982) (class of "state prisoners" not protected under section 1985(3) because there has been no congressional determination that it requires special federal civil rights assistance, and because it does not possess "discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex"). Moreover, the Supreme Court has recently displayed a restrictive approach to the ambit of section 1985(3) coverage. *Scott*, 463 U.S. at 836–38, 103 S.Ct. at 3359–60 (refused to extend scope to "conspiracies motivated by economic or commercial animus," and called it "a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans").

## III. THE 42 U.S.C. § 1986 CLAIM

■ This Circuit has recently adopted the broadly accepted principle that a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985. *Mollnow*, 716 F.2d at 632. Accordingly, Trerice's section 1986 claim properly fell with his section 1985(3) claim.

## IV. THE COMMON LAW TORT CLAIM

■ Cargill, whether or not he acted in a way which we might deem reprehensible, is shielded from tort liability by a consistent line of cases in this Circuit which guarantees absolute immunity to military personnel from common law tort claims by other servicemen for injuries suffered in the course of duty. *See Mollnow v. Carlton*, 716 F.2d 627, 628 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984); *Mattos v. United States*, 412 F.2d 793, 794 (9th Cir.1969); *Bailey v. Van Buskirk*, 345 F.2d 298, 298 (9th Cir.1965), *cert. denied*, 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966); *see also Tirrill v. McNamara*, 451 F.2d 579, 579 (9th Cir.1971). These decisions constitute extensions of the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which erected a barrier

to tort actions against the United States under the Federal Tort Claims Act for injuries suffered by members of the armed forces incident to their military service.

Other circuits are in general accord with our adaptation of *Feres*. *E.g., Misko v. United States*, 453 F.Supp. 513, 514 (D.D.C.1978), *aff'd*, 593 F.2d 1371 (D.C.Cir.1979); *Rotko v. Abrams*, 338 F.Supp. 46, 48 (D.Conn.1971), *aff'd per curiam*, 455 F.2d 992 (2d Cir.1972); *Jaffee v. United States*, 663 F.2d 1226, 1234–35 (3d Cir.1981) (en banc), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *Hass ex rel. United States v. United States*, 518 F.2d 1138, 1143 (4th Cir.1975); *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1152–53 (5th Cir.1981); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1490–92 (10th Cir. 1983); *see also Kennedy v. Maginnis*, 393 F.Supp. 310, 311–12 (D.Mass.1975); *Fountain v. United States*, 533 F.Supp. 698, 703 (W.D.Ark.1981).

On occasion, courts have declined to provide absolute immunity to military personnel for their tortious conduct. *See Henderson v. Bluemink*, 511 F.2d 399, 401–02 (D.C.Cir.1974); *Jackson v. Kelly*, 557 F.2d 735, 736–40 (10th Cir.1977) (en banc). Neither of these cases, however, involved a plaintiff who was serving on active duty in the military at the time of his injury, and so each case was decided with general principles of governmental immunity rather than the special doctrines applicable to *intramilitary* torts. *See Misko*, 453 F.Supp. at 514 (distinguishing *Bluemink*); *Hass*, 518 F.2d at 1143 (distinguishing between the two different immunity doctrines).

The only possible obstruction in this otherwise smoothly flowing stream of authority is a mid-19th century Supreme Court case, *Wilkes v. Dinsman*, 48 U.S. (7 How.) 89, 12 L.Ed. 618 (1849), *after remand*, 53 U.S. (12 How.) 390, 13 L.Ed. 1036 (1851). *Wilkes* essentially offered only a qualified intramilitary immunity, which would be unavailable in cases involving maliciously motivated tortious conduct. The case has continued to be cited occasionally, although apparently only in *dicta*. *E.g., Chappell v.*

*Wallace,* 462 U.S. 296, 305 n. 2, 103 S.Ct. 2362, 2368 n. 2 (1983); *Butz v. Economou,* 438 U.S. 478, 492–94, 98 S.Ct. 2894, 2903–04, 57 L.Ed.2d 895 (1978); *Feres,* 340 U.S. at 141 n. 10, 71 S.Ct. at 157 n. 10; *Jaffee,* 663 F.2d at 1246 & n. 8, 1257–60 (Adams, J., concurring in part and dissenting in part; Gibbons, J., dissenting); *Lewis v. United States,* 663 F.2d 889, 891 n. 3 (9th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982).

While *Wilkes* has never been explicitly overruled, its significance has been so re-shaped by the incessant flow of common law development, led by the Supreme Court itself, that it does not obstruct the stream of subsequent cases that have created an absolute intramilitary tort immunity. A common law case undergoes a process of mutation as it is applied to new and different factual situations, as other regions of the law are developed and changed, and as the real world context itself evolves. In the case of *Wilkes,* its significance has been altered with the expansion of the *Feres* doctrine. *Wilkes* was utilized by the Court in *Feres* to confine its holding to negligent, and not intentional, torts; yet *Feres* has since been extended, unimpeded by *Wilkes,* to cover not only actions against the United States pursuant to the Federal Tort Claims Act for negligent torts, but also actions against individuals, actions for constitutional torts, actions based upon the common law of torts, and actions for injuries arising out of intentional tortious conduct. *See, e.g., Chappell, supra; Stanley v. CIA,* 639 F.2d at 1152–53 (and cases cited therein).

Moreover, "since the time of *Wilkes,* significant changes have been made establishing a comprehensive system of military justice." *Chappell,* 462 U.S. at 305 n. 2, 103 S.Ct. at 2368 n. 2. Hence, there has been increasing cause for judicial reluctance to enter into regulation of the armed forces, a responsibility reserved for Congress by Article I of the Constitution, and a corresponding shrinking need for the civil remedy and the burdensome intrusion into military affairs which it entails. *See id.* at 302–04, 103 S.Ct. at 2366–67.

As a consequence, *Wilkes* does not undermine the subsequent authorities which have created an absolute intramilitary immunity to common law tort liability for injuries sustained in the line of duty. Trerice's common law tort claim on behalf of his son was properly dismissed.

## CONCLUSION

Trerice has failed to state a claim upon which relief can be granted. Accordingly, his action was properly dismissed, and the judgment of the district court is

AFFIRMED.