Kenard E. JOHNSON–EL, Appellant,

v.

DISTRICT OF COLUMBIA, et al., Appellee.

No. 88–1243.

District of Columbia Court of Appeals.

Argued June 4, 1990.
Decided July 31, 1990.

Mark S. Raffman, with whom Michael S. Giannotto, Washington, D.C., both appointed by the court, was on the brief, for appellant. Kenard E. Johnson–El, filed a pro se brief.

Martin B. White, Asst. Corp. Counsel, Chevy Chase, Md., with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Asst. Corp. Counsel, Washington, D.C., were on the Memorandum in Lieu of Brief, for appellee.

Before ROGERS, Chief Judge, NEWMAN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

Kenard E. Johnson–El appeals from the dismissal of his *pro se* complaint alleging that District prison officials delayed or denied medical treatment for his scalp condition. At the time the complaint was filed, Johnson–El was a prisoner at Youth Center One in the District's Lorton, Virginia correctional facility.[1] The complaint was dismissed without opinion by order of the Superior Court following the District's Motion to Dismiss, in which the District argued that Johnson–El's claim was barred by his failure to give written notice of his injury to the Mayor of the District of Columbia within six months of the injury pursuant to D.C.Code 12–309 (1989) and for failure to state a claim upon which relief could be granted. On appeal, the District concedes that dismissal on the notice ground was proper only in so far as it addressed Johnson–El's common law tort claims against the District.

Now represented by counsel, Johnson–El concedes that the dismissal of his common law tort claims is mandated by *Campbell v. District of Columbia*, 568 A.2d 1076 (D.C. 1990). However, he contends that his complaint, liberally construed, also states an Eighth Amendment claim under 42 U.S.C. § 1983 (1981), which is not subject to the notice provisions of § 12–309 and, thus, may not be dismissed on that ground. We

agree that a § 1983 claim is not subject to the notice requirement of § 12–309. The District defends the dismissal as to this claim on the ground that the pleadings are inadequate to allege a § 1983 claim. We disagree. We hold that Johnson–El's pleadings adequately state a claim under 42 U.S.C. § 1983; we reverse and remand for reinstatement of the complaint on that ground.

I

On July 10, 1986, while incarcerated at Youth Center One in the District's Lorton, Virginia correctional facility, Kenard E. Johnson–El filed a handwritten *pro se* complaint against Mayor Marion Barry, Director of the District of Columbia Department of Corrections James Palmer, and Administrator of Youth Center One Arthur Graves. According to the allegations contained in the complaint, in December 1986,[2] while incarcerated at Youth Center One, Johnson–El was taken by prison authorities to see a dermatologist at the District's Occoquan facility concerning a scalp condition. The dermatologist diagnosed Johnson–El's scalp condition and made an appointment for him to return in thirty days for further treatment. However, prison officials never permitted Johnson–El to keep that appointment, despite his repeated complaints and requests. Johnson–El was told by the Medical Technician Assistant at Youth Center One that the reason for delaying or denying him access to the dermatologist was the lack of available transportation. As a result of the delay or denial of medical treatment, Johnson–El's condition worsened and his hair began to fall out.

Over the next two years, Johnson–El and the District engaged in discovery and filed various pre-trial motions. In his pretrial statement, filed June 8, 1988, Johnson–El repeated the allegations made in his complaint, adding that the delay or denial of

---

1. Johnson–El was released from Youth Center One on or about July 25, 1989.

2. The complaint erroneously states that the visit took place in 1986 when, in fact, it took place in 1985.

medical treatment was unjustified.[3] He also identified his scalp condition as "folliculits (sic), Sycosis, [ ]Vulgaris" resulting in "permanent Keloid Sycosis." With his pretrial statement, Johnson–El filed a Request for Stipulation, in which he alleged that prison officials had acted with "deliberate indifference to serious medical needs ... constitut[ing] the 'unnecessary and wanton infication (sic) of pain Proscribed (sic) by the Eighth Amendment,'" and cited as cases he would rely upon *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Hurst v. Phelps*, 579 F.2d 940 (5th Cir.1978).

On June 14, 1988, the District moved for dismissal of the complaint, or in the alternative summary judgment, on the ground that Johnson–El had failed to serve written notice on the Mayor of the District of Columbia, as required by D.C.Code § 12–309.[4] In an order dated August 17, 1988, the Superior Court granted the District's motion to dismiss without opinion. This appeal followed.

## II

Since a challenge to the sufficiency of a complaint brought under Rule 12(b)(6) presents questions of law, our standard of review for dismissal for failure to state a claim is *de novo*. *Trerice v. Pederson*, 769 F.2d 1398, 1400 (9th Cir.1985); *see also American Ins. Co. v. Smith*, 472 A.2d 872, 873–74 (D.C.1984) (Rule 12(b)(6), which is identical to its federal counterpart, Fed. R.Civ.P. 12(b), is designed solely to test the legal sufficiency of the complaint.) In reviewing the dismissal of a complaint, we must "construe the complaint in the light most favorable to the plaintiff and assume, for purposes of the motion, that the allegations in the complaint are true." *Vicki*

*Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 364 (D.C.1984). "[A]ny ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." *Doe v. United States Dep't of Justice*, 243 U.S.App.D.C. 354, 364, 753 F.2d 1092, 1102 (1985). Moreover, a complaint should not be dismissed on grounds that the court doubts that the plaintiff will prevail. *McBryde v. Amoco Oil Co.*, 404 A.2d 200 (D.C.1979). More particularly, prisoner *pro se* complaints must be construed liberally in favor of the plaintiff, *see, e.g., Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam), and "should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This principle applies with special force in *pro se* civil rights suits brought under 42 U.S.C. § 1983. *Rubin v. O'Koren*, 621 F.2d 114, 117 (5th Cir.1980).

Johnson–El's complaint, broadly construed, states three claims. Two of the claims sound in common law tort, with each claim asking the District to answer for the alleged misconduct of its prison employees regarding delay or denial of Johnson–El's medical treatment. One claim rests on a theory of simple negligence; the other rests on a theory of intentional tort. In addition, Johnson–El's complaint states a tort claim[5] arising from the alleged application of cruel and unusual punishment, in violation of the Eighth Amendment, by means of deliberate indifference to Johnson–El's need for medical treatment. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

---

3. He also correctly stated the date of his visit to the dermatologist as December, 1985. (R. 56).

4. § 12–309 (1989) provides:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

5. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) ("A section 1983 action is a tort damage action even though the duty the defendant is alleged to have breached is created by the Constitution or federal law.").

As noted above, prisoner *pro se* complaints must be construed liberally in favor of the plaintiff, *see, e.g., Hughes, supra,* 449 U.S. at 10, 101 S.Ct. at 176, and "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley, supra,* 355 U.S. at 45–46, 78 S.Ct. at 102. However, this rule of liberal construction is not without limits. In order to withstand dismissal, such complaints must plead the alleged violation of civil rights with specificity. *Maute v. Roth,* 90 F.R.D. 174, 177 (E.D.Pa. 1981) ("plaintiff shall specifically identify when, where, and who violated which of his rights.") (citing *Ressler v. Scheipe,* 505 F.Supp. 155 (E.D.Pa.1981)); *see also Benson, supra,* 761 F.2d at 341 (dismissal of § 1983 complaint predicated on failure to implement adequate system for diagnosis and treatment of injuries was proper where complaint failed to allege specific deficiencies in the prison's health care system). Moreover, a complaint alleging an Eighth Amendment violation by prison officials stemming from the lack of medical attention must allege that those officials acted with deliberate indifference, rather than out of simple negligence. *Estelle v. Gamble, supra,* 429 U.S. at 104–05, 97 S.Ct. at 291–92. However, even deliberate indifference by prison officials need not violate the Eighth Amendment where the prisoner's medical condition is not sufficiently serious. *Shabazz v. Barnauskas,* 790 F.2d 1536, 1538 (11th Cir.1986) (A prisoner's development of pseudofolliculitis or "shaving bumps" due to the fact that prison officials required him to shave, even though on instructions from a physician, he should not have been so required, is not a sufficiently serious medical condition to constitute an Eighth Amendment violation).

---

**6.** 42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

Reading the complaint broadly and in conjunction with the pretrial statement, we conclude that Johnson–El states an Eighth Amendment claim for medical mistreatment under 42 U.S.C. § 1983.[6]

The complaint provides:

On or around December, 1986 I was taking (sic) to the dermatologist at Occoquan facility, for head skin problem *I complainted (sic) for several month's (sic) about the problem.* The dermatologist set a date for 30 day's (sic) later, I haven't made the appointment yet. The M[edical] T[echnician] A[ssistant] told me at Youth Center one that they don't have transportation to transport to the dermatologist. My skin on my head is still broking (sic) out, and it seems that my hair is falling out. *Prison officials denying or delaying access to medical treatment.*

(emphasis added). The pretrial statement provides:

I. FACTS

(I) Brief statement of the nature of the Controversy:

A.

On or around December, 1985 plaintiff complained of skin problems, on[ ] the head. Plaintiff did see the Dermatologist who set a appointment (sic) for 30 days latter (sic). Plaintiff never made the appointment. Control Center at Youth Center One delayed and denied prescried (sic) treatment without justification.

II. DAMAGES:

Plaintiff suffer (sic) from folliculits (sic), Sycosis, [ ]Vulgaris, because of defendant's delayed and denied prescribed medical treatment it [ ]becamse cronical (sic) and the result was permanent Keloid Sycosis.

The Request for Stipulation, filed with the pretrial statement, provides:

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, and Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Cases or Stautory (sic) Provision [ ] to be [ ] relied on:

Estelle v.[ ]Gamble, Tex.1976

HURST v.[ ]Phelps, 597 F.2d 940

Deli berate (sic) indifference to se[r]ious medical needs of prisoners constitutes the "unnecessary and wanton infiction (sic) of plan"

Proscribed by the Eighth Amendment. This is true whether the indifferenec (sic) is manifested by prison doctors in their respones (sic) to prisoners (sic) needs or by prison guards in intentionally denying or delaying access to medical care or intenionally (sic) interfering with the treatment once prescribed.

Taking these allegations as true and considering them in the light most favorable to Johnson–El, we conclude that the complaint meets the requirements of specificity, deliberate indifference, and seriousness of medical condition.

### Specificity.

■■■■ As noted above, plaintiff is required to state where, when, and who violated which of his rights. *Maute, supra,* 90 F.R.D. at 177. The complaint states that the alleged deprivation of rights took place in Youth Center One at the District's Lorton, Virginia facility.[7] The complaint, read in conjunction with the pretrial statement, states the time of the deprivation of rights as a period of "several" months beginning in December 1985 and, apparently, continuing at least to the date of filing on July 10, 1986.[8] The complaint specifies the persons carrying out the alleged deprivation of rights as "prison officials," more specifically the "M[edical] T[echnician] A[ssistant]." Moreover, the reference to prison officials and the Medical Technician Assistant specifies that the alleged deprivation was carried out under color of law. Finally, the complaint, broadly read and buttressed by subsequent pleadings, alleg-

es deprivation of rights under the Eighth Amendment, since its reference to Johnson–El's incarceration and the delay or denial of needed medical treatment by prison officials charged with his custody, buttressed by the pre-trial statement's reference to "deliberate indifference" and his citation to *Estelle v. Gamble, supra* and *Hurst v. Phelps,* 579 F.2d 940 (5th Cir. 1978), as cases upon which his claim relies, invokes the Eighth Amendment ban on cruel and unusual punishment.

### Deliberate indifference.

■■■■ The requirement that a § 1983 claim allege "deliberate indifference" by prison personnel is satisfied by alleging that prison officials knew of the prisoner's need for medical care, as recommended by medical professionals, and intentionally refused to provide it. *Estelle, supra,* 429 U.S. at 104–05, 97 S.Ct. at 291 (deliberate indifference is manifested in "intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed."); *Ancata v. Prison Health Servs.,* 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.") (citing *Robinson v. Moreland,* 655 F.2d 887 (8th Cir.1981)); *Ramos v. Lamm,* 639 F.2d 559, 575 (8th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment."); *Martinez v. Mancusi,* 443 F.2d 921, 924 (2d Cir.1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971) (prison officials who deliberately defy the express instructions of a

---

7. He also states the place of his examination by a dermatologist as the Occoquan facility.

8. As we noted above, the complaint erroneously states that the period began with Johnson–El's visit to the dermatologist "[o]n or around December 1986." We decline to view this over-

sight as fatal in a *pro se* complaint where it is obvious from the filing date and the pre-trial statement that the plaintiff has made an error, and there is no evidence on the record of prejudice to the defendant because of the error.

prisoner's physician are more than merely negligent). *See also Gill v. Mooney*, 824 F.2d 192, 195–96 (2d Cir.1987) (allegation that prisoner was denied extra time in gymnasium to participate in rehabilitative exercise program prescribed by his physician was sufficient to state a colorable claim or deliberate indifference to prisoner's medical needs); *accord Payne v. Lynaugh*, 843 F.2d 177, 178 (5th Cir.1988). *Compare Gill, supra*, 824 F.2d 192 at 195 (in the absence of medical proscriptions, prison guard's decision to ignore prisoner's complaints of dizziness and nausea while painting amounted to nothing more than mere neglect). Furthermore, a case of deliberate indifference may be made out by alleging that necessary medical treatment was delayed for non-medical reasons. *Ancata, supra,* 769 F.2d at 704. (complaint alleging that prison officials refused to take prisoner to doctor's appointments on ground he was a security risk stated a § 1983 claim, since such action by prison officials could result from deliberate indifference rather than accident or inadvertence). *See also Hurst, supra*, 579 F.2d at 941.

Johnson–El's complaint sets forth allegations similar to those held to be sufficient in the above cases, *i.e.* that prison officials delayed or denied what they acknowledged as necessary medical treatment for non-medical reasons. *E.g., Ancata, supra*, 769 F.2d at 704; *Gill, supra*, 824 F.2d at 195–96. Specifically, he alleges the following: (1) that his scalp condition was diagnosed by a dermatologist at the District's Occoquan facility, who prescribed a course of medical treatment that included an appointment within thirty days' time; (2) that prison officials, including the Medical Technician Assistant, were aware of this diagnosis because they took him to see the dermatologist at their own facility and because Johnson–El made them aware of it through repeated complaints and requests that he be permitted to see the dermatologist; (3) that prison officials, specifically the Medical Technician Assistant, gave a non-medical reason for the delay or denial in granting him access to the dermatologist—the lack of available transportation, thus acknowledging, indirectly at least, that the prescribed treatment was necessary; and (4) that prison officials were aware that his condition was worsening through his repeated complaints and requests for treatment. On the basis of these allegations, particularly when read in conjunction with the pretrial statement, and in light of the cases cited above, it is within the realm of the possible that Johnson–El can prove that the conduct of prison officials involved "more than ordinary lack of due care for the prisoner's interests of safety" and thus, constituted cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Thus, we cannot say that "it is beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 102.

### *Seriousness of Medical Condition.*

 In our view, the allegation of hair loss is enough to suggest the presence of a serious medical condition.[9] As was

9. *See Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974):

> [The] question would be, we think, whether it had been proved that a physician exercising ordinary skill and care at the time of the request for medical care would have concluded that the symptoms of the prisoner evidenced a *serious* disease or injury; that the potential for harm by reason of delay or denial of medical care was substantial; and that such harm did result. In deciding at the pleading stage whether a claim has been stated, the court must consider whether the factual allegations of the complaint *suggest* the presence of these factors. (emphasis added).

*Thomas,* which was cited with approval by the Supreme Court in *Estelle,* addressed what was required for a complaint for medical mistreatment to rise to the level of a Fourteenth Amendment violation. Although the claim before us is stated under the Eighth Amendment, we note that the due process rights granted to a prisoner in pre-trial detention under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). Thus, we view the requirement that a medical mistreatment complaint "suggest" a serious injury or illness to be applicable in the Eighth Amendment context as well.

made clear at oral argument, the District concedes this point as well.

### Conclusion.

 For the foregoing reasons, we conclude that Johnson–El's complaint presents a basic Eighth Amendment claim. As an Eighth Amendment claim brought under 42 U.S.C. § 1983, Johnson–El's complaint is not subject to the notice provisions of D.C. Code § 12–309. *Felder v. Casey*, 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988); *see also Brown v. United States*, 239 U.S.App.D.C. 345, 742 F.2d 1498 (1984) (en banc). Thus, it may not be dismissed on this ground, and we reverse and remand for its reinstatement.[10]

*Affirmed in part and remanded for further proceedings consistent with this opinion.*

---

**10.** Of course, we express no opinion on whether the evidence Johnson–El can produce will be sufficient to withstand a motion for summary judgement or a directed verdict.