Marsha L. LUTZ, Plaintiff–Appellee,

v.

SECRETARY OF THE AIR FORCE, Defendant,

and

Gerald L. Ivory, Manuel E. Ferdin, and United States of America, Defendants–Appellants.

No. 89–16310.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1991.

Decided Sept. 16, 1991.

George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., Mark W. Pennak, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Robert R. Bryan, San Francisco, Cal., for plaintiff-appellee.

Before FLETCHER, NORRIS and TROTT, Circuit Judges.

FLETCHER, Circuit Judge:

This case involves *Bivens* and state common law claims brought by a former major in the United States Air Force, Marsha Lutz, who alleges that the individual defendants, Technical Sergeants Ivory and Ferdin ("the sergeants"), broke into her office, took personal papers and disseminated them to other military personnel with the intent to injure her reputation and career. The sergeants, along with the United States, seek to appeal the district court's denial of their motion to dismiss on grounds of *Feres* intra-military immunity. They also seek to appeal what they term the district court's "[denial of] defendants'

motion to substitute the United States as the sole party defendant for plaintiff's common law claims" pursuant to 28 U.S.C. 2679(d)(1).[1]

We conclude, based on the collateral order rule, *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), that we have jurisdiction to review the district court's order denying the motion to dismiss and affirm the district court's finding that the individual defendants' actions were not "incident to military service" within the meaning of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny.

## FACTS [2]

Marsha Lutz entered the Air Force in 1972 at the rank of second lieutenant following an outstanding academic and athletic career at the University of California at Davis. She rose steadily in the service, and by 1984 had achieved the rank of major. During the course of her military career, she continued to reap various awards and commendations—based on both her athletic and her military abilities. She consistently received outstanding reviews, was selected for and excelled in a number of special training programs, earned numerous awards and commendations, and served as the first woman in a number of significant postings. At the time of the events in question, Major Lutz was the Commander of the 2035th Information Systems Squadron, the only female within the Strategic Air Command to serve in such a position. She was also a regional and ultimately a national finalist for a prestigious White House Fellowship.

In 1984, three of Major Lutz's subordinates, Technical Sergeants Ivory, Ferdin and Cotton entered her office after hours on one or more occasions and removed personal property from her desk including a sealed letter and notes. Apparently the letter and notes could be read to imply that Major Lutz was involved in a lesbian relationship with her civilian secretary. The sergeants made copies of the notes and letter and showed them to various squadron personnel. Major Lutz alleges that these actions were taken in an attempt to harm or ruin her reputation and career.

Following the dissemination of this material, Major Lutz alleges that her superiors took a series of summary actions which effectively destroyed her career in the military, ultimately compelling her to resign. Major Lutz filed a seven count complaint in federal district court on February 25, 1987 asserting *Bivens* claims and common law claims under California state law against various individual defendants and the Secretary of the Air Force. On September 21, 1987, the district court dismissed with prejudice Lutz's claims for damages against the United States. The court also dismissed her claims for declaratory and injunctive relief against the United States with leave to amend. Lutz filed a second amended complaint on October 21, 1987. Following a second motion to dismiss hearing, the district court dismissed with prejudice the remaining claims against the United States. The court deferred ruling on Sergeant Ferdin's motion to dismiss pending further discovery. On August 1, 1989, the district court addressed and denied the sergeants' renewed motion to dismiss both the *Bivens* and common law claims against them based on the *Feres* doctrine, finding that "the defendants' actions were not 'incident to military service,'" and that because

---

**1.** This framing of the district court's order is inaccurate in two respects. First, it does not appear from the record that defendants ever brought a "motion to substitute"; they merely included arguments related to 28 U.S.C. § 2679(d) in their Memorandum in Support of Motion to Dismiss. Second, the district court order which is the subject of this appeal does not address the substitution issue at all. The district court held only that the plaintiff's *Bivens* and common law claims are not barred by the *Feres* doctrine because the actions of the individual defendants were not "incident to military service."

**2.** Since properly viewed, this case involves an appeal from an order denying dismissal of the action for want of jurisdiction, we accept as true, for purposes of appeal, the factual allegations contained in Lutz's complaint. *Atkinson v. United States*, 825 F.2d 202, 204 n. 2 (9th Cir.1987), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988).

"[t]he only disciplinary action taken by the Air Force was against Major Lutz ... [t]he Court [would] not be second-guessing military discipline by evaluating defendants' conduct at issue in this case."[3] It is that order which is the subject of the present appeal.

Although the sergeants argued as one ground for dismissal of Lutz's common law claims against them that 28 U.S.C. § 2679 mandated that the United States be substituted as the defendant for those claims, the district court order addressed only the applicability of the *Feres* doctrine. It made no mention of substituting the United States as defendant, of the certification by the Attorney General that the sergeants were acting in the scope of their employment, or of § 2679.[4] There is no indication in the record that the sergeants or the government moved for reconsideration of that order or brought to the court's attention its failure to address the substitution issue. There is likewise no indication in the record below or on appeal that Lutz contests the Attorney General's certification. Indeed, Lutz's complaint alleges that the three sergeants were acting within the scope of their employment. The sergeants and the United States filed a timely notice of appeal which specified that they were appealing "from the order dated August 1, 1989 which denied official immunity and substitution of the United States."

## DISCUSSION

### A. *Jurisdiction*

■ Appellants assert two possible bases for jurisdiction. They contend that the panel has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 under the collateral order doctrine initially articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and recently revisited by the Court in *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). In the alternative, they argue that the panel has jurisdiction over the district court's purported refusal to substitute the United States as defendant, and can therefore also reach the *Feres* issue based on pendent appellate jurisdiction. Because we conclude that we have jurisdiction to review the district court's order under the collateral order doctrine, we need not reach the issue of pendent jurisdiction.

In *Gulfstream* the Supreme Court rearticulated the "three-pronged test to determine whether an order that does not finally resolve a litigation is nonetheless appealable under § 1291." 485 U.S. at 276, 108 S.Ct. at 1136-37. To come under the collateral order exception, the challenged order must (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; and (3) "be effectively unreviewable on appeal from a final judgment." *Id.* (internal quotations omitted).

In *Feres v. United States*, the Supreme Court held that members of the armed services could not sue the government for injuries that "arise out of or are in the course of activity incident to service," 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), creating a judicial exception to the Federal Tort Claims Act's (FTCA's) broad waiver of sovereign immunity. *Atkinson*, 825 F.2d at 204. While *Feres* was an FTCA case, applicable to common law tort claims against the government, the Supreme Court has extended the *Feres* doctrine to *Bivens* claims. *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). This circuit has extended the application of *Feres* to suits between individual members of the mili-

---

**3.** The district court did dismiss the individual defendants other than Ferdin and Ivory from the action for lack of service pursuant to Fed. R.Civ.P. 4(j).

**4.** The individual defendants attached the certification by the Attorney General that they were acting within the scope of their employment as employees of the United States as an exhibit to their Memorandum in Support of the Motion to Dismiss. The original record reveals that the certification was not properly labelled as an exhibit and was erroneously placed between the pages of an unrelated declaration.

tary, recognizing an "intramilitary immunity" from suits based on injuries sustained incident to service. *See e.g., Stauber v. Cline,* 837 F.2d 395 (9th Cir.), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *Trerice v. Pedersen,* 769 F.2d 1398, 1403 (9th Cir.1985); *Mollnow v. Carlton,* 716 F.2d 627, 628 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984); *Mattos v. United States,* 412 F.2d 793, 794 (9th Cir.1969).[5] Thus, if Major Lutz's injuries arose out of or were in the course of activity incident to service, then the *Feres* doctrine would preclude her recovery on either her *Bivens* claims or her common law tort claims.

Appellants argue that the district court's denial of the motion to dismiss based on the *Feres* doctrine satisfies the three *Gulfstream* criteria because 1) the district court has determined conclusively the question of whether the defendants' actions were "incident to military service," 2) that question is entirely separate from the merits of Lutz's constitutional and common law claims, and 3) the *Feres* defense will be effectively unreviewable on appeal from final judgment because a central purpose of the *Feres* doctrine is not only to avoid liability, but also to preclude a trial on the merits because the judicial inquiry itself, rather than just a merits judgment, causes the disruption of military affairs the *Feres* doctrine is designed to prevent.

The question of whether a district court's refusal to dismiss a case on *Feres* grounds constitutes a reviewable collateral order has been addressed in only one case. *In re Agent Orange Product Liability Litigation,* 745 F.2d 161 (2d Cir.1984) ("*Agent Orange*").[6] In *Agent Orange,* the Second Circuit rejected the proposition that an order denying dismissal based on *Feres* is reviewable under the collateral order doctrine, finding that none of the three elements was met in that case. We find *Agent Orange* to be distinguishable on its facts and no longer persuasive in light of both *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding that district court's finding that petitioner is not protected by qualified immunity is appealable under the collateral order doctrine) and recent Supreme Court cases applying and extending the *Feres* doctrine.

*Agent Orange* is factually distinguishable as to the first prong of the collateral order doctrine. In *Agent Orange* the district court had expressly stated that its order was "tentative" and that the government could "renew its motion to dismiss at any time before or during trial as further evidence and legal developments suggest." 745 F.2d at 164. Here, by contrast, the district court appears to have determined conclusively the question of whether the defendants' actions were "incident to military service," thus meeting the first prong.

5. We note that the extension of *Feres* to common law actions between individual members of the military which involve neither the FTCA nor *Bivens-type claims has been neither mandated nor expressly sanctioned by the Supreme Court. See Chappell v. Wallace,* 462 U.S. 296, 305 n. 2, 103 S.Ct. 2362, 2368 n. 2, 76 L.Ed.2d 586 (1983), and *United States v. Stanley,* 483 U.S. 669, 683, 107 S.Ct. 3054, 3063–64, 97 L.Ed.2d 550 (1987) (both distinguishing the earlier case of *Wilkes v. Dinsman,* 48 U.S. 89 (1849) which permitted an intentional tort claim against an individual superior officer on the basis that it, unlike a *Bivens* action, involved a well-recognized common-law cause of action and did not ask the Court to imply a new kind of cause of action). Several of our sister circuits recently have eschewed broad application of *Feres* in that context. *See Cross v. Fiscus,* 830 F.2d 755, 757 (7th Cir.1987) (refusing altogether to transfer the principles of *Feres* to tort litiga-

tion among military personnel); *Durant v. Neneman,* 884 F.2d 1350, 1352 and n. 5 (10th Cir.1989) (distinguishing intra-military immunity from "true *Feres* cases" and holding that the former are judged by different standards), *cert. denied sub nom Neneman v. Tassin,* 493 U.S. 1024, 110 S.Ct. 728, 107 L.Ed.2d 747 (1990).

6. Generally, jurisdiction to review such orders has been premised not on the collateral order exception of § 1291, but on certification by the district court of an interlocutory appeal pursuant to § 1292(b). *See Stanley,* 483 U.S. at 673, 107 S.Ct. at 3058; *Hinkie v. United States,* 715 F.2d 96, 97–98 (3rd Cir.1983) (district court's refusal to apply *Feres* reviewed on interlocutory appeal pursuant to § 1292(b)); *United States v. Lee,* 400 F.2d 558, 559 (9th Cir.1968) (same); *Milleville v. United States,* 751 F.Supp. 976 (M.D.Fla.1990) (district court certified for interlocutory appeal its refusal to dismiss based on *Feres* ).

As to the second prong, the *Agent Orange* opinion found the *Feres* issue to be "inextricably intertwined" with the merits of the claims because they were "third party claims arising from the independent injuries of the veterans' wives and children" and it would be "difficult to predict whether a finding of liability [would] undermine military discipline, as in *Feres* ..." without a factual record. *Id. Agent Orange's* analysis of the second *Gulfstream* prong should not persuade us for two reasons. First, the present case does not involve complex third-party claims. Second, subsequent Supreme Court cases have broadly applied the "incident to service" test and rejected a particularized inquiry as to the consequences for military discipline. *Stanley*, 483 U.S. at 681, 107 S.Ct. at 3062 (rejecting arguments that the rationale of *Feres* should preclude intramilitary *Bivens* actions only where there is "reason to believe that in the particular case the disciplinary structure of the military would be affected" or where it "affirmatively appears that military discipline would be affected" in favor of a broader approach precluding such actions "whenever the injury arises out of activity 'incident to service' "); *United States v. Shearer*, 473 U.S. 52, 59, 105 S.Ct. 3039, 3043–44, 87 L.Ed.2d 38 (1985) (defining *Feres* inquiry as whether plaintiff's claims are "the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness"). We conclude that the determination of whether the claimed conduct is "incident to military service" is at least as separate from the underlying merits of the claim as is the inquiry into whether there has been a "violation of clearly established law" in the qualified immunity context. *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806 (denial of qualified immunity held reviewable under the collateral order doctrine). We therefore find that the second, "separateness" prong of the collateral order doctrine is met.

The third *Cohen* prong requires us to consider whether a district court's refusal to dismiss on *Feres* grounds is effectively unreviewable on appeal from final judgment. In *Agent Orange* the government argued, as appellants do here, that "the *Feres* doctrine, which guards against the threat to military discipline, protects it not only from potential liability, but also from having to submit to trial." 745 F.2d at 164. Also as appellants do here, the government relied on cases such as *Abney v. United States*, 431 U.S. 651, 655–59, 97 S.Ct. 2034, 2037–40, 52 L.Ed.2d 651 (1977) (appeal permitted from a collateral order subjecting the defendant to double jeopardy), *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (appeal permitted on issue of Congressional immunity under the Speech and Debate Clause), and *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (appeal recognized where President Nixon interposed a defense of absolute immunity from civil liability). The court in *Agent Orange* distinguished those cases in part on the basis that they involved "an absolute protective privilege, grounded in the Constitution," while "the *Feres* defense does not arise from any claim of absolute privilege ... [or] implicate a constitutional right." 745 F.2d at 165. After *Agent Orange* was decided, however, the Supreme Court held in *Mitchell v. Forsyth* that an order denying qualified immunity (which likewise is neither absolute nor expressly grounded in the Constitution) is appealable under the collateral order rule. Thus, the fact that *Feres* is not an absolute immunity or a right expressly grounded in the Constitution is not determinative.

The question here, as in *Mitchell*, is whether *Feres* amounts to "an *immunity from suit* rather than a mere defense to liability ... [such that] it is effectively lost if a case is erroneously permitted to go to trial." 472 U.S. at 526, 105 S.Ct. at 2815. We note as an initial matter that the fact that the *Feres* doctrine has been treated by this circuit as a "limitation on subject matter jurisdiction" rather than an "immunity," *Stauber*, 837 F.2d at 398 (citing *Atkinson*, 825 F.2d 202), and that we have held in other contexts that "a challenge to subject matter jurisdiction is not appealable before trial," *United States v. Layton*, 645 F.2d

681, 683 (9th Cir.1981), is not determinative of the question. In *Layton* we held that challenges to subject matter jurisdiction generally fail the third prong of the collateral order doctrine test because "the requirement that a federal court have subject matter jurisdiction 'does not ... encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all.'" *Id.* (quoting *United States v. MacDonald*, 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978)). Rather than rigidly focusing on the label "jurisdictional limitation" as opposed to "immunity," however, we must consider the concerns underlying the *Feres* doctrine and, specifically, whether immunity from trial is an animating force.

In *Agent Orange*, the court considered whether immunity from trial was the core concern underlying *Feres* and observed that "[t]he military discipline policy is merely one of three factors considered under the *Feres* doctrine, and the trial aspect is only one of the factors bearing on military discipline." *Agent Orange*, 745 F.2d at 165. The court therefore concluded that although there were some policy considerations militating in favor of the government, they did "not present a sufficiently grave threat of irreparable harm ... [such that the order] would be effectively unreviewable on appeal from a final judgment." *Id.* A panel of this circuit touched on the question tangentially in *Henninger v. United States*, 473 F.2d 814, 815 (9th Cir.1973). In *Henninger* we considered whether a soldier who was injured by military doctors' medical malpractice after he had been "completely processed for discharge" but was still on active duty was precluded by *Feres*. The district court had applied *Feres* and dismissed Henninger's claim. The panel rejected Henninger's invitation to undertake an individualized analysis of whether his case would impinge on military discipline, observing that such a case-by-case analysis would be "an exceedingly complex task" requiring nearly every case to be litigated. In that context, the panel remarked that "it is the suit, not the recovery, that would be disruptive of discipline and the orderly conduct of military af-

fairs," implying that the *Feres* doctrine provides immunity from suit rather than just a preclusion of liability. 473 F.2d at 815–16.

Language in the Supreme Court's opinion in *Stanley* likewise suggests that the process of defending a lawsuit, not merely the end result, compromises military discipline and structures and thus implicates *Feres'* rationale:

A test for liability that depends on the extent to which particular suits would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters. Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. Even putting aside the risk of erroneous judicial conclusions (which would becloud military decisionmaking), the mere process of arriving at correct conclusions would disrupt the military regime.

483 U.S. at 682–83, 107 S.Ct. at 3062–64. *See also Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058–59, 52 L.Ed.2d 665 (1977) (holding that third-party indemnity against the government is limited by the rationale of *Feres* where the injured party is a service person and stating that one factor weighing against recovery is that "[t]he trial would ... involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions").

We are unpersuaded by the Second Circuit's reasoning that because there are other—arguably more—significant rationales underlying the *Feres* doctrine, concern with intrusion by the judicial process itself is insufficient to meet the third prong of *Cohen*. Both the Supreme Court and this circuit have recognized that one of the central rationales for the *Feres* doctrine, safeguarding military discipline, may be affected as much by the litigation process itself as by the outcome. Were a district court's

refusal to apply the *Feres* doctrine non-reviewable before trial, that order would be "effectively unreviewable" as to the judicial intrusion issue because the damage already would be complete. Accordingly, we conclude that the third prong of *Cohen* is met and that we may review the district court's refusal to dismiss on *Feres* grounds under the collateral order doctrine.

### B. *Applicability of Feres Doctrine*

■ We start with the recognition, as did the district court, that not every action by one member of the armed services against another implicates military decision making, relates to the military mission, or is incident to service. Here three subordinates had a personal vendetta against a superior. They broke into her office after hours, opened her private mail, and disseminated it in an attempt to ruin her reputation. It seems hardly possible that this conduct or the resulting injury to the victim "arises out of or is incident to service." The district court found it did not. However, in light of the recent tendency to apply *Feres* broadly, we are presented with a closer question than is apparent at first blush. As we noted in *Persons v. United States*, 925 F.2d 292 (9th Cir.1991) (applying *Feres* to a medical malpractice case):

> For all the complexity of the evolution of the [*Feres*] doctrine, ... what is *not* unclear and escapes all current confusion is its overall trend. From *Brooks [v. United States]*, 337 U.S. 49 [69 S.Ct. 918, 93 L.Ed. 1200, (1949)], the first Supreme Court case addressing an FTCA suit brought by a service person, to *United States v. Johnson* [481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)], *supra*, jurisprudence has been guided by an increasing sense of awe for things military. As a result, practically any suit that "implicates the military judgments and decisions," runs the risk of colliding with *Feres*.

925 F.2d at 295 (citations omitted).

We "review independently the question whether the *Feres* doctrine is applicable to the facts reflected in the record." *McGowan v. Scoggins*, 890 F.2d 128, 129 (9th Cir.1989).[7] We conclude that although the district court focused its inquiry too narrowly on whether in this case court scrutiny would actually impact military discipline, rather than on the broader question of whether the injury was "incident to service," its ultimate conclusion that *Feres* does not bar Lutz's claims against the sergeants was correct.

There are three rationales which have been recognized as the foundation for the *Feres* doctrine: "(1) the distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government to liability based on the fortuity of the situs of the injury; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure." *Atkinson*, 825 F.2d at 204. This circuit at one time focused on the military discipline rationale to the exclusion of the others. *See, e.g., Monaco v. United States*, 661 F.2d 129, 132 (9th Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). We recognized in *Atkinson*, however, that a later Supreme Court case, *United States v. Johnson*, 481 U.S. 681, 691, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987), "breathe[d] new life into the first two *Feres* rationales ...." 825 F.2d at 205–6.

Here, the district court focused exclusively on the question of whether the suit would require the civilian court to second-guess military decisions and impair essential military discipline. It found as a factual matter that because there was no "Air Force disciplinary decision based upon investigation of the defendant's (sic) conduct at issue in this case," Lutz's lawsuit would not require "second-guessing military discipline," and the *Feres* doctrine should not bar her claims. The district court erroneously relied on a case which had already

---

**7.** *McGowan*, the one recent case in which this circuit has found that the *Feres* doctrine did not apply to bar the plaintiff's claims, contains a complete summary of the Supreme Court cases on the *Feres* doctrine, 890 F.2d at 129–131, and an exhaustive catalogue of the Ninth Circuit's application of the doctrine. *Id.* at 132–36.

been amended, i.e., *Atkinson v. United States,* 804 F.2d 561 (9th Cir.1986), *amended,* 825 F.2d 202 (9th Cir.1987), *cert. denied,* 485 U.S. 987, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988), and examined the possible effect of the suit on military discipline in a particularized, fact-based manner which has been disapproved by the Supreme Court in *Stanley,* 483 U.S. at 681, 682, 107 S.Ct. at 3062, 3062–63 (rejecting inquiry into whether "in the particular case the disciplinary structure of the military would be affected"). The Supreme Court made plain in *Stanley* that in deciding whether *Feres* applies, courts should answer the broader question of whether "the injury arises out of activity 'incident to service,' " 483 U.S. at 681, 107 S.Ct. at 3062, rather than considering any actual impact on military discipline. We therefore turn to that task.

Although Lutz's complaint also asserted claims against her superiors and the Secretary of the Air Force for failing to discipline the sergeants and imposing discipline on her without adequate procedures, those claims have been dismissed and are not before us on appeal.[8] We deal only with the narrow question of whether injuries sustained by Lutz as a result of the sergeants entering her office after hours, opening her personal mail, and disseminat-ing it to others in an attempt to cause harm to her reputation, are injuries which "arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159, *quoted in United States v. Johnson,* 481 U.S. at 684, 107 S.Ct. at 2065.

■ Appellants focus on Major Lutz's status as an active duty military officer, on the fact that Lutz and the sergeants were all "subject to military discipline," and on the fact that the damage she alleges was to her career *in the military.* These criteria are overbroad, however, and violate *Stanley's* express rejection of a rule which would "disallow [claims] by servicemen entirely." 483 U.S. at 681, 107 S.Ct. at 3062.[9] That is, every lawsuit by one active-duty member of the military against another would clearly implicate the first two factors, and any suit involving an injury impairing the plaintiff's ability to continue working would involve damage to his or her "military" career. For example, had the sergeants physically assaulted Lutz to get back at her, causing injuries which prevented her from continuing in her occupation, the same factors would apply. We find it inconceivable that *Feres* would be read to preclude a suit against the individual defendants in such a situation.[10] While

---

8. We note parenthetically that such claims (for negligent supervision or challenging disciplinary decisions) have been found to fall squarely within the prohibited zone protected by *Feres. See, e.g., United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *Brown v. United States,* 739 F.2d 362 (8th Cir.1984), *cert. denied,* 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985).

9. In *Stauber* we grounded our application of *Feres* in part on the fact that "Stauber and the defendants were always under the direct command of active-duty military officers ... [and] shared the same direct military relationships whether on civilian or military status." 837 F.2d at 400. *Stauber's* consideration of whether the parties were all "subject to military discipline" must be read in context, however, or it has the effect, contrary to *Stanley,* of prohibiting all suits between active-duty members of the military. In *Stauber* the plaintiff brought claims related to workplace harassment and sought to get out from under *Feres* because he was a civilian employee of the National Guard. We rejected that argument, noting that all tech-nicians were required to be members of the National Guard as a condition of their civilian employment, 837 F.2d at 396, and were therefore subject to military discipline. *See also, McGowan,* 890 F.2d at 138–39 (citing *Stauber* for the proposition that a civilian's claim may be barred by *Feres* where the injured person was working under the direct supervision of military personnel).

10. In *Shearer,* the Supreme Court precluded a FTCA suit by the survivors of a murdered serviceman who brought claims against the *government* for failing to supervise the murderer (also a servicemember) adequately or to warn the decedent. 473 U.S. at 53–54, 105 S.Ct. at 3040–41. There was no suggestion, however, that the survivors would have no claim against the murderer, or that the murder itself was an injury arising "incident to service." In *Trerice v. Pedersen,* 769 F.2d 1398 (9th Cir.1985), we declined to follow *Wilkes v. Dinsman,* 48 U.S. (7 Haw.) 89, 12 L.Ed. 618 (1849) (permitting a cause of action against superior for maliciously imprisoning and flogging plaintiff), and stated that subsequent cases had "created an absolute intramilitary tort immunity for injuries sustained

the absence of active-duty status or subjection to military discipline may defeat the application of *Feres, see McGowan,* 890 F.2d 128, their presence is insufficient, standing alone, to invoke *Feres.*

Turning to appellants' actions, we, like the district court, cannot fathom how they can be construed to be "activities incident to service." We find unpersuasive the appellants' argument that their actions were "incident to service" because it was their duty to report any violations of Air Force regulations by their superior officers to the appropriate authorities. While the existence of such a duty would likely immunize them from liability for making colorable reports of violations to superiors, we echo the district court's conclusion that "it is not conceivable that this duty required defendants to remove personal documents from their commander's desk after working hours and distribute them to other Air Force personnel." [11]

In *Stauber v. Cline,* 837 F.2d 395, most factually similar to the case at hand, the plaintiff sued three co-workers for intentional infliction of emotional distress and libel, alleging that over a five-year period, they had harassed him both on- and off-base, during regular work-duty hours and after hours. We concluded that his suit was barred by *Feres* intramilitary immunity. *Stauber* is distinguishable in several respects. Unlike the present case, the defendants in *Stauber* were all superior in rank to the plaintiff and one was his direct supervisor. *Id.* at 396. While this is not controlling, it informs our consideration of whether the harassing conduct was incident to military service.[12] More importantly, the plaintiff in *Stauber* alleged harassing acts which largely took place during working hours and in the process of work. *Id.* at 400 ("the district court concluded that [plaintiff's] claims arose from conduct in the workplace.... [and] it is clear from the record that the off-base, after-hours harassment was merely an extension of on-base events"). In addition, many of the harassing acts were related to working conditions. *Id.* at 396 n. 2 (plaintiff alleged *inter alia* that defendants used sirens and

---

in the line of duty." 769 F.2d at 1404. In light of *Stanley*'s express refusal to apply *Feres* based solely on a plaintiff's *status* as an active-duty member of the military, in favor of the "incident to service" inquiry, we read *Trerice* as holding only that the fact that a tort may be intentional does not remove it from the "incident to service" inquiry—not that a servicemember is precluded absolutely from bringing a tort action against another servicemember without regard to whether the injury arose from conduct incident to service.

**11.** The fact that the activity took place on base is not itself controlling. *See Johnson v. United States,* 704 F.2d 1431, 1437 (9th Cir.1983) (rejecting as myopic the view earlier suggested in *Troglia v. United States,* 602 F.2d 1334, 1337 (9th Cir.1979), "that if a serviceman is injured while *on-base,* he cannot recover under the FTCA, whatever the cause of the injury," in favor of broader exploration of the totality of the circumstances). Also distinguishable are cases where the *Feres* doctrine has been applied because the plaintiff, although not engaged in activities related to military service, availed herself of facilities or services provided only to members of the military, thus exposing herself to the negligence of the government or other service personnel. *Persons,* 925 F.2d at 296 (malpractice claim barred by *Feres* because decedent "enjoyed the use of the naval hospital 'solely by virtue of his status as a serviceman'");

*Millang v. U.S.,* 817 F.2d 533 at 535 (9th Cir. 1987) (off-duty servicemember run over by on-duty military police while "enjoy[ing] the use of [a] picnic area solely by virtue of his status as a serviceman"); *Bon v. United States,* 802 F.2d 1092, 1095 (9th Cir.1986) (boating accident between two military personnel on authorized liberty found incident to service because plaintiff "enjoyed the use of [the facility] solely by virtue of her status as a member of the military"). Although Lutz's use of her office and the desk in her office arguably amounted to availing herself of a "benefit" of military service, her injury did not arise directly out of her use of the desk. Moreover, the intentional nature of the defendants' actions places them beyond the scope of the "enjoyment of benefits" cases.

**12.** We recognize the potential injustice in suggesting that a superior officer may be able to invoke *Feres* to avoid liability for harassment of a subordinate while the subordinate may not be able to do the same. We likewise acknowledge that *Stanley* makes clear that *Feres* does not apply only to officer-subordinate situations. 483 U.S. at 681–83, 107 S.Ct. at 3062–64. Nevertheless, in light of the widely acknowledged practice in the military of superior officers treating subordinates severely and in a manner which many civilians would find harassing, the officer-subordinate relationship may be one factor informing our consideration of whether the activity was "incident to military service."

horns and other noisemaking devices; forced him to leave his work area door open while others were allowed to close their doors; allowed everyone in the work area except plaintiff to use ear protectors; forbade plaintiff from working outside; maliciously and intentionally disrupted, disorganized and sabotaged plaintiff's work area; hid and rearranged parts and tools and jammed plaintiff's toolbox closed; and excluded only plaintiff from use and possession of keys to the common work area). In that context, we held that examining the relationship between "on- and off-base events ..., beyond determining that the conduct involved was incident to service, would result in an impermissible intrusion upon military matters." *Id.* at 400.

In *Stauber* we expressly diverged from *Brown v. United States,* 739 F.2d 362 (8th Cir.1984) (permitting a black National Guardsman who had been the victim of a mock lynching at an on-base drinking party to sue the perpetrators), *cert. denied,* 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985), in which the Eighth Circuit declined to apply the *Feres* doctrine based on its finding that the defendants' actions could not conceivably serve any military purpose.[13] *Stauber,* 837 F.2d at 400–01 n. 10. We noted, however, that *Brown* "[might] be distinguishable ... in that the mock lynching was less connected with on-duty activity and with the command relationship than was the harassment of Stauber." *Id.* In effect, *Stauber* holds that where it is sufficiently ambiguous whether challenged actions were "incident to military service," and the process of disentangling conduct not incident to service from that incident to service would itself work an impermissible intrusion upon military matters, *Feres* must be applied to the whole course of conduct. However, where, as in *Brown* and as in the present case, the actions were completely separate from on-the-job activities, the rationale of *Stauber* does not apply.

Although this circuit has accepted *Feres,* albeit grudgingly, as "an ineradicable fea-

ture of our legal landscape," *Persons,* 925 F.2d at 299, we have also recognized that "even *Feres* concatenations must come to an end." *Id.* Intentional tortious and unconstitutional acts directed by one servicemember against another which further no conceivable military purpose and are not perpetrated during the course of a military activity surely are past the reach of *Feres.* The Tenth Circuit in *Durant v. Neneman* has expressed it well:

> "[O]ur evolving jurisprudence has created a zone of protection for military actors, immunizing actions and decisions which involved military authority from scrutiny by civilian courts. It is our conclusion, however, that this zone was never intended to protect the personal acts of an individual when those acts in no way implicate the function or authority of the military.
>
> \* \* \* \* \* \*
>
> When a soldier commits an act that would, in civilian life, make him liable to another, he should not be allowed to escape responsibility for his act *just because those involved were wearing military uniforms at the time of the act.* When military personnel are engaged in distinctly nonmilitary acts, they are acting, in effect, as civilians and should be subject to civil authority.

*Durant v. Neneman,* 884 F.2d 1350, 1353, 1354 (10th Cir.1989) (original emphasis). Accordingly, we affirm the district court's holding that the individual acts were not "incident to military service" and thus not protected by the *Feres* doctrine.

C. *Substitution of United States as Defendant.*

Appellants also assert on appeal that the district court erred by failing to substitute the United States as defendant on the common law claims. Title 28, section 2679(d)(1), which was enacted as part of the Federal Employees Liability Reform and Tort Compensation Act (known as the Westfall Amendments to the Federal Tort Claims Act), provides:

---

13. The *Brown* court did, however, find that the plaintiff's claim against superior officers for

failing to prevent or investigate the incident was barred by *Feres.*

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). The Attorney General has vested authority in the United States Attorneys to make § 2679(d) certifications. 28 C.F.R. § 15.3. In this case, the Acting United States Attorney certified that the sergeants were acting within the scope of their employment as employees of the United States at the time of the incidents alleged in Major Lutz's complaint. The certification was filed as an exhibit to the defendants' Memorandum in Support of Dismissal.

Appellants characterize the district court as having *refused* to substitute the United States as a defendant and as having *denied* their *motion to substitute*. There is, however, nothing in the record to support the existence of such refusal, denial or even such motion.[14] Nor did the district court decide the question raised by the defendants as to whether, if the United States is substituted as a defendant, the claims must then be dismissed pursuant to 28 U.S.C. § 2680(h). There is, therefore, nothing for this court to review.

Although the *Feres* doctrine's "incident to military service" test would appear as a practical matter to encompass the scope of employment inquiry, the questions are legally distinct. *Valdiviez v. United States*, 884 F.2d 196, 198–99 (5th Cir.1989) (*Feres* doctrine's "incident to service" inquiry is distinct from the FTCA scope of employment inquiry); 2 L. Jayson, Handling Federal Tort Claims § 216.01, at 9–162 (1990) ("the fact that a serviceman's activities would be considered 'incident to service' for purposes of the application of the *Feres* doctrine ... does not necessarily make those same activities within the scope of employment for the purposes of determining the government's liability under *respondeat superior* doctrine").[15] The scope of employment inquiry, including, in the military context, whether the employee was "acting in line of duty," is defined by the applicable state law of respondeat superior. *Washington v. United States*, 868 F.2d 332, 333–34 (9th Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 536 (1989). Absent any indication by the district court that it intended to address the substitution issue, or that it viewed the substitution issue as encompassed within the *Feres* analysis, we cannot presume that the district court implicitly addressed the legally distinct question of scope of employment. The district court in the first instance should have an opportunity to address these matters on remand.

## CONCLUSION

We AFFIRM the district court's finding that the individual defendants' actions were not "incident to service" and that the *Feres* doctrine therefore does not apply to bar Lutz's claims against them. The Attorney General's certification that the defendants

**14.** We note that had the district court been requested, it could have reviewed the propriety of the certification. This circuit has recently joined a number of other circuits in holding that district courts have the power to review § 2679(d) scope certifications where they are challenged. *Meridian International Logistics, Inc. v. United States*, 939 F.2d 740 (9th Cir.1991). The district court reviews the certification de novo. At 745.

**15.** One commentator states that "the 'incident to service' concept is a much broader one than the 'scope of employment' test used for *respondeat superior* purposes," 1 L. Jayson, *Handling Federal Tort Claims*, § 155,02, at 5–84.3, n. 25. Although we appreciate that Lutz's failure to challenge the scope of employment certification (indeed, she alleges in her complaint that the individual defendants were acting within the scope of employment) may well be inconsistent with the position she has taken as to the *Feres* doctrine, we believe that that issue should be addressed in the first instance by the district court. Because the district court failed to address the substitution issue at all, and the parties certainly gave it little indication that it should, it had no occasion to consider how the two inquiries fit together.

were acting in the scope of their employment has not been challenged by Lutz or ruled on by the district court. Accordingly, the issue is not properly before us.

The case is REMANDED for further proceedings consistent with this opinion.