12 F.3d 1111
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Diane WASHINGTON, Plaintiff-Appellant,
v.
UNITED STATES of America; H. Lawrence Garrett III,
Defendants-Appellees.
 No. 92-56330.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 11, 1993.
Decided Nov. 16, 1993.
 
 Before: TANG, FLETCHER and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Diane Washington, a naval reservist, appeals the district court's order dismissing her action against the United States which alleges that she contracted HIV from an HIV-positive sailor as a result of the negligence of naval personnel. Because her suit is barred by the Feres doctrine, we affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 The following facts are undisputed unless otherwise noted.
 
 
 4
 Diane Washington, a member of the United States Naval Reserve who worked part-time as a journalist for the Navy,[1] met Petty Officer John Joseph in December 1988. They became friendly as a result of working in the same office and, on January 22, 1989, Washington engaged in sexual intercourse with Joseph at Joseph's off-base apartment. Washington insisted that Joseph use a condom because she feared pregnancy, but the condom broke during the sexual act. This was the only time Washington had sex with Joseph.
 
 
 5
 In July 1989, Washington was informed by the Navy that at her annual screening she had tested positive for HIV, the virus that causes AIDS. Washington, who had always before tested negative, had not had intercourse with anyone besides Joseph since her last negative test. After the positive test result was revealed to her, Washington was ordered pursuant to SECNAVINST 5300.30B to disclose her HIV-positive status to all potential sexual partners.
 
 
 6
 The Navy had transferred Joseph from a post in Hawaii to one in Oakland when it had been discovered that he was carrying HIV, approximately one year before his contact with Washington. In Oakland, Joseph had been medically evaluated and counseled regarding his HIV-positive status, but had never been issued a so-called "safe sex" order of the sort Washington received. Following his medical evaluation, Joseph had been retained on active duty.
 
 
 7
 The parties sharply dispute, with some evidence on each side, whether a "safe sex" order was required as part of standard Navy procedure at the time Joseph received counseling. In any event, there is no doubt that Joseph knew of his HIV infection at the time he had intercourse with Washington and that he withheld this information from her, to her grave detriment. Washington claims she would not have had intercourse with Joseph had she known he was HIV positive.
 
 
 8
 At Washington's request, the Navy commenced an investigation into the matter. The investigation revealed that in November 1988 Joseph's wife had called Joseph's commanding officer, Douglas Schamp, and informed him that Joseph was pursuing sexual liaisons with other women without telling them he was carrying the AIDS virus. Commander Schamp called in Joseph to speak with him about this allegation, but Joseph denied any wrongdoing. Apparently Schamp chose not to intervene further.
 
 
 9
 As a result of the Navy's investigation, Joseph was court-martialed and convicted of aggravated assault. His conviction was upheld by a court of military review. United States v. Joseph, 33 M.J. 960 (N.M.C.M.R.1991). One of Joseph's defenses at the court-martial proceeding was that he had never been issued a "safe sex" order--that "[h]e wasn't ordered to do or not do anything." Counsel's argument at court martial.
 
 
 10
 Washington brought suit against the United States in the Southern District of California under the Federal Tort Claims Act (FTCA), asserting that her contraction of HIV was the result of the Navy's negligence in failing to issue a "safe sex" order to Joseph. After hearing the government's motion to dismiss, Judge Gordon Thompson, in a written disposition, held that Washington's suit was barred by the Feres doctrine, and dismissed the case without prejudice. Rather than appealing Judge Thompson's dismissal, Washington filed another complaint, this time acting pro se. Her second case was assigned to Judge Gilliam.
 
 
 11
 Washington's second complaint was virtually identical to her first except that she added H. Lawrence Garrett III, Secretary of the Navy, as a defendant, and included new allegations concerning the non-service-connected nature of her injury and the Navy's safe-sex policy.[2] The government brought another motion to dismiss, arguing that the case was barred by the doctrine of res judicata and that Garrett was not a proper defendant under the FTCA, which authorizes suits only against the United States. Judge Gilliam granted the government's motion as to Garrett but denied it as to the United States, ruling that "plaintiff may have a viable claim under the Federal Tort Claims Act [because] California law recognizes that a defendant has a duty to control a third party's conduct if 'the defendant stands in some special relationship to ... the [third party] whose conduct needs to be controlled.' " May 15, 1992 Order of District Court.[3] The brief order did not discuss either the effect of Judge Thompson's dismissal of Washington's earlier action or the Feres doctrine.
 
 
 12
 Washington, having again retained counsel, commenced discovery in the case. However, shortly after Washington had been allowed additional discovery by a magistrate judge, Judge Gilliam entertained a renewed motion to dismiss by the government. In ruling on this motion, Judge Gilliam noted that he had "wanted to make sure that the plaintiff had every opportunity to get her allegations before the court," but that Judge Thompson's determination on the Feres question constituted the "law of the case." Reporter's Transcript of October 5, 1992 Hearing at 11. Turning briefly to the merits, Judge Gilliam found that although the Navy had adopted a "safe sex" policy as of December 15, 1988, that policy had not been implemented until February 1989, "and in between those two dates the problem that the plaintiff was having occurred." Id. Accordingly, Judge Gilliam orally granted the government's motion to dismiss on the ground that Washington had failed to state a cause of action.[4]
 
 It is this order that Washington appeals.[5]
 DISCUSSION
 
 13
 A district court's dismissal for failure to state a claim or for lack of subject matter jurisdiction is a question of law that is reviewed de novo. Oscar v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir.1992) (en banc), cert. denied, 113 S.Ct. 655 (1992); Atkinson v. United States, 825 F.2d 202, 204 (9th Cir.1987), cert. denied, 485 U.S. 987 (1988). A grant of summary judgment similarly is reviewed de novo. High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 570 (9th Cir.1990).
 
 
 14
 The Navy maintains that Washington's suit is foreclosed because, under principles of res judicata, she is bound by Judge Thompson's ruling in the first case that the action is barred by Feres and because, in any event, the action cannot survive Feres.[6] Washington contends that Judge Thompson's ruling is not dispositive and asserts that because she was "in her civilian status" at the time she was injured and because she is "not entitled to any government benefits mentioned as alternative compensation in Feres," her action is viable. Br. of Appellant at 31.[7]
 
 
 15
 The Feres doctrine is an ever-expanding, judicially created exception to the broad waiver of sovereign immunity represented by the Federal Tort Claims Act. In Feres v. United States, 340 U.S. 135 (1950), the Supreme Court held that members of the armed services could not maintain actions against the United States for injuries that "arise out of or are in the course of activity incident to service." Id. at 146. The three stated rationales underlying the Feres doctrine, as expounded in Feres and subsequent cases, are: "(1) the distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government to liability based on the fortuity of the situs of the injury; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure." Atkinson, 825 F.2d at 204.
 
 
 16
 The negligence Washington alleges, and the gravamen of her suit, is the failure to issue an appropriate military order to Joseph. The action thus implicates the third asserted rationale for Feres, the need to protect the military disciplinary structure from judicial "second-guessing." See Stauber v. Cline, 837 F.2d 395, 398 (9th Cir.) (discussing disciplinary rationale), cert. denied, 488 U.S. 817 (1988). Because the resolution of Washington's claim would necessarily subject the Navy's actions (or inactions) surrounding Joseph's misconduct to judicial scrutiny, the suit cannot be maintained.
 
 
 17
 We agree with the Navy that the Supreme Court's decision in United States v. Shearer, 473 U.S. 52 (1985), is controlling in this regard. In Shearer, Army Private Vernon Shearer was off-duty and away from base when he was kidnapped and murdered by another serviceman, Andrew Heard. Shearer's mother brought suit under the FTCA, alleging that the Army had been negligent because it knew that Heard was dangerous and yet had " 'failed to exert a reasonably sufficient control over' him and 'failed to warn other persons that he was at large.' " Id. at 53-54. The Court held that Feres barred the action because it would entail the "hal[ing] [of] Army officials into court to account for their supervision and discipline of Private Heard," id. at 59, explaining that
 
 
 18
 [t]o permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct.
 
 
 19
 Id. at 58 (emphasis added). The Ninth Circuit has adhered to the Shearer rationale in upholding the dismissal of a wrongful death action which alleged that the military was negligent in its supervision of a schizophrenic patient who killed an off-duty serviceman. Estate of McAllister v. United States, 942 F.2d 1473, 1477-79 (9th Cir.1991), cert. denied, 112 S.Ct. 1164 (1992).
 
 
 20
 Washington seeks to rely on Lutz v. Secretary of the Air Force, 944 F.2d 1477 (9th Cir.1991), which was decided after Judge Thompson's dismissal of her first complaint. In Lutz, we held that Feres did not extend to an action brought by an air force major based on her subordinates' opening and dissemination of her private mail, as a result of which she was compelled to resign. Id. at 1484. In so holding, we observed that the subordinates' misconduct had not been the subject of military discipline and that the plaintiff was not asserting claims against the Air Force for failure to take disciplinary action. Id. at 1484-85. These factors distinguish Lutz from the case at hand, and the distinction is a critical one. Lutz itself notes that a claim for negligent supervision or one that otherwise challenges a military disciplinary decision "fall[s] squarely within the prohibited zone protected by Feres." Id. at 1485 n. 8.
 
 
 21
 In sum, although the Navy may have failed to live up to its own policy by failing to issue Joseph a "safe sex" order and perhaps should have investigated Joseph's sexual conduct when it received the phone call from his wife rather than waiting until after he had infected a fellow serviceperson with HIV, under the Feres doctrine as interpreted in Shearer and McAllister, those actions are immune from this court's "second-guessing." In light of our determination that the suit is barred by Feres, we do not address the res judicata issue or the other grounds for affirmance urged by the Navy.[8]
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Apparently, she held this job in a civilian capacity
 
 
 [2]
 Although on appeal Washington suggests that the United States could be held liable for medical malpractice, as a negligent volunteer, or for failure to warn, none of these alternate bases for liability is pleaded in her complaint, which alleges only general negligence in failing to inform Joseph of his responsibilities to potential sexual partners and negligent supervision in neglecting to issue a "safe sex" order
 
 
 [3]
 Under the FTCA, the United States, with some exceptions, is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. Sec. 2674. Liability is therefore determined with respect to state law. Doggett v. United States, 875 F.2d 684, 686 (9th Cir.1989)
 
 
 [4]
 The government's motion sought dismissal or, in the alternative, summary judgment. When the court ordered the case dismissed it did not say whether it was also granting summary judgment
 
 
 [5]
 Washington does not challenge Judge Gilliam's earlier order dismissing Garrett from the case
 
 
 [6]
 The Navy also raises various state law defenses to Washington's FTCA claims
 
 
 [7]
 Washington also asserts that she was improperly denied leave to amend her complaint and the opportunity to develop additional evidence. A district court's denial of leave to amend is reviewed for abuse of discretion, Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991), as is a refusal to permit further discovery, Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir.1991). Although Washington claims to have requested leave to amend in her opposition papers to the government's renewed motion to dismiss, we have not located any such request in the cited document; nor, apparently, did she ask for leave to amend at the hearing. In any event, the district court would not have abused its discretion in denying leave to amend the complaint since, as we explain below, Washington's suit is barred by Feres. This is so notwithstanding the fact that the magistrate had granted Washington's request for additional discovery
 
 
 [8]
 While it presents persuasive legal authority, in its repeated emphasis on the "consensual" nature of Washington's sexual contact with a man who apparently had no misgivings about risking her life, the government's brief is remarkably unsympathetic to the plight of someone who did nothing wrong and certainly should not be blamed for her condition