**Heidi A. JENTOFT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–1812.

United States Court of Federal Claims.

March 23, 2005.

---

Michael Crain, Crain & Davis, LLC, Athens, Georgia for plaintiff.

Richard Ewing, Trial Attorney, Todd Hughes, Assistant Director, David Cohen, Director, Peter Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C. for defendant. Maj. Matthew Ruzicka, U.S. Army Litigation Division, Arlington, VA of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's motion under United States Court of Federal Claims Rules ("RCFC") 12(b)(1) and 12(b)(6) to dismiss Counts III and IV of the complaint, entitled "Equal Pay Act Claim" and "Equal Pay Act Retaliation Claim," respectively. After the initial briefing of defendant's motion, the Court requested that the parties submit supplemental briefs on the question whether plaintiff was a dual status technician. Defendant filed its supplemental brief on December 17, 2004, and plaintiff filed its supplemental brief on January 13, 2005. Oral argument was deemed unnecessary. For the reasons set forth below, defendant's motion to dismiss is GRANTED.

## BACKGROUND [1]

Plaintiff, Major Heidi A. Jentoft, was hired by the Georgia National Guard in May 2001

---

1. The recitation of facts in this section does not constitute findings by the Court. All of the stated

as a "dual status" military technician, pursuant to 32 U.S.C. § 709(b) (2000). Def.'s Supplemental Mem. Attach. 1. She was a Major in both the Guard and the Army National Guard of the United States, and she was a GS–12 excepted service Federal employee. Plaintiff was assigned, as a technician, to the Army Facility # 1 in Winder, Georgia, where she was a supervisory maintenance test pilot. Her duties were to manage the aircraft maintenance shop that provides aviation unit maintenance and limited aviation intermediate maintenance service for assigned aircraft as well as backup maintenance for the aircraft maintained by the Army Aviation Support Facility. While performing her duties, she wore a military uniform and was referred to and answered to the title of Major. She was assigned, as a Major in the Guard, to the 126th Aviation Regiment of the Georgia Army National Guard.

Prior to plaintiff's being hired by the Georgia National Guard, Colonel Dannis E. Livingston and Major Anthony Sutter represented to plaintiff that a maintenance test pilot retention allowance bonus in an amount of approximately $10,000.00 was guaranteed to be paid to her if she took the job. Compl. ¶ 16. Relying on the promise of the bonus, as well as other job-related benefits, plaintiff accepted the job offer to start the position of Supervisory Test Pilot on May 20, 2001. Compl. ¶ 17. After being hired, plaintiff never received the bonus, despite the fact that the other test pilots, all of whom were male, working in substantially similar positions within the Georgia National Guard were receiving the bonus. Compl. ¶ 18. Plaintiff was the only female test pilot in the Georgia National Guard and the only test pilot who did not receive the bonus. *Id.*

In or about September 2001, plaintiff complained to Colonel Livingston and Major Sutter that she believed gender may be a factor in her not receiving the bonus. Compl. ¶ 19. Plaintiff filed a charge of discrimination with the EEOC on September 17, 2001. *Id.* The basis for plaintiff's charge of discrimination was that she did not receive the retention

bonus while other similarly situated male test pilots did. *Id.* On or about November 20, 2001, plaintiff complained to Colonel Jimmy Davis that gender may be a factor in awarding bonuses. Compl. ¶ 20.

After plaintiff complained to her superiors, Colonel Livingston, Colonel Davis, and Major Sutter, she began receiving unwarranted negative performance evaluations and false accusations regarding her abilities as a technician within the Georgia National Guard. Compl. ¶ 21. Prior to her complaints about not receiving the bonus, plaintiff earned excellent performance evaluations. Compl. ¶ 22. After the complaints, Major Sutter, plaintiff's immediate supervisor, specifically indicated to plaintiff that although he did not want to, he was ordered to investigate the negative evaluations. Compl. ¶ 23. Colonel Livingston, Colonel Davis, and Major Sutter all intentionally retaliated against plaintiff for complaining of gender-based pay discrimination by terminating her employment with Georgia National Guard effective April 5, 2002. Compl. ¶ 24.

Plaintiff filed her complaint on July 31, 2003. Counts I and II alleged gender discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3(a) (2000). Counts III and IV alleged a violation of the Equal Pay Act, 29 U.S.C. § 206(d) (2000), and retaliation for complaints of the alleged violation of the Equal Pay Act, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* On April 5, 2004, plaintiff filed an Unopposed Motion to Dismiss Counts I and II (Title VII Claims) from Proceedings. Thereafter, on April 8, 2004, Counts I and II were dismissed by Order of the Court. Defendant's motion seeks to dismiss the claims set forth in Counts III and IV of the complaint.

### DISCUSSION

**I. Standard for Motion to Dismiss Pursuant to Rule 12(b)(1)**

 When considering a motion to dismiss for lack of subject matter jurisdiction

___

facts are either undisputed or alleged and assumed to be true for the purposes of the pending motion.

pursuant to RCFC 12(b)(1), the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *C C Distribs., Inc. v. United States*, 38 Fed. Cl. 771, 774 (1997) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988)). The court is required to decide any disputed facts that are relevant to the issue of jurisdiction. *Reynolds*, 846 F.2d at 747. The burden of establishing jurisdiction is on the plaintiff. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *C C Distribs.*, 38 Fed.Cl. at 775.

## II. The Court Lacks Jurisdiction Over Plaintiff's Claim for Retaliation Pursuant to the FLSA

Section 15(a)(3) of the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [the FLSA]." 29 U.S.C. § 215(a)(3) (2000). Section 16(b) states that "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title." 29 U.S.C. § 216(b) (2000). That section further provides that an action to recover damages for violations of section 215(a)(3) may be "maintained against any employer (including a public agency) in any Federal or State *court of competent jurisdiction.*" *Id.* (emphasis added).

The court's subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 (2000), extends to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort.*" 28 U.S.C. § 1491(a)(1) (emphasis added). Plaintiff's claim that she was illegally terminated in "retaliation for [her] complaints and opposition to what she reasonably believed to be unlawful employment practices and gender-based pay discrimination," Compl. ¶ 37, sounds in tort. *Henrichs v. United States*, 27 Fed.Cl. 669, 671 (1993); *Qualls v. United States*, 230 Ct.Cl. 534, 678 F.2d 190, 193, 195–96 (1982). Accordingly, the Court of Federal Claims is not "a court of competent jurisdiction," as required by section 16 of the FLSA, regarding plaintiff's claim with respect to the alleged violation of section 15(a)(3) of the FLSA. Plaintiff's claim for retaliation, set forth in Count IV of her complaint, must be dismissed.

## III. Standard for Motion To Dismiss Pursuant to Rule 12(b)(6)

Dismissal under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy. *N.Y. Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed.Cir.1999). In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). The case may be properly dismissed if plaintiff "can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1131 (Fed. Cir.1998); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000). RCFC 12(b)(6) specifically instructs, however, that where such a motion is filed and "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by RCFC 56." RCFC 12(b); *see also Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir.2000); *Singleton v. United States*, 54 Fed.Cl. 689, 691 (2002).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986). A material fact is one that will affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant for summary judgment bears the burden of demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met its burden, the non-movant "must proffer countering evidence sufficient to create a genuine factual dispute." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). "The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial." *Id.* at 1562–63.

## IV. Plaintiff's Claim Pursuant to the Equal Pay Act Must be Dismissed

The Equal Pay Act provides that

[n]o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility.

29 U.S.C. § 206(d)(1). Section 216(b) of title 29 provides a right of action for violations of section 206:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction.

29 U.S.C. § 216(b). The term employee is defined by the FLSA, in pertinent part, as:

In the case of an individual employed by a public agency, such term means ... any individual employed by the Government of the United States ... as a *civilian* in the military departments (as defined in section 102 of Title 5).

29 U.S.C. § 203(e)(2)(A)(i) (emphasis added).

In supplemental briefing ordered by the Court, defendant provided documentary evidence that plaintiff was a dual status technician pursuant to 32 U.S.C. § 709(b) and 10 U.S.C. § 10216(a) during her tenure with the Department of the Army, Georgia National Guard. Plaintiff's response to defendant's supplemental brief stated that plaintiff agrees that she was hired as a dual status technician. Having determined that plaintiff was a dual status technician, the Court must now determine whether plaintiff was a "civilian" as required by 29 U.S.C. § 203(e)(2)(A)(i) or whether her functions were irreducibly military such that plaintiff would be unable to maintain a claim under the Equal Pay Act.

The language of the Equal Pay Act makes clear that, in using the limiting adjective "civilian," Congress was declaring that the Equal Pay Act extended no rights to military (*i.e.,* non-civilian) employees of military departments. The parties did not provide and the Court is not aware of any reported decisions on the question of whether a dual status technician could, under any circumstances, come within the term "civilian" employee of the military departments as used in the Equal Pay Act. Accordingly, we look to cases involving statutory analogs for guidance. The principal analog is Title VII, and specifically 42 U.S.C. § 2000e–16(a), because the Equal Employment Opportunity Commission and the federal courts that have considered Title VII have interpreted it to apply only to suits by "civilian" employees of the military departments. *Fisher v. Peters,* 249 F.3d 433, 438 (6th Cir.2001).

The courts have taken two approaches to the question of whether dual status technicians have rights under Title VII or other statutes that, by their express language or as judicially interpreted, are limited to "civilian" employees. Under either approach, the dual status technician is almost always unable to

maintain a claim. The Courts of Appeals for the First and Sixth Circuits have held that dual status technicians are inherently "military" and never "civilian" and thus, would have no rights under the Equal Pay Act. Other courts opine that dual status technicians might have a claim that is "nonmilitary," but no court appears to have held that any dual status technician's claim was "civilian."

### A. First and Sixth Circuit Case Law Holds That Dual Status is Always Irreducibly Military

The First Circuit addressed the civilian versus military nature of a dual status technician in *Wright v. Park*, 5 F.3d 586 (1st Cir.1993). Wright, a dual status technician in the Air National Guard, brought claims for discrimination under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, the federal whistle blower statute, 5 U.S.C. §§ 2301–2302, and the state whistle blower law. *Id.* at 587. The court determined that "[b]ecause National Guard technicians serve as the Guard's support staff and are, in fact, those whose job it is to maintain and assure the Guard's strength and organization, they are indispensable to this nation's defense." *Id.* at 588. The court found it "unsurprising that, no matter the context, every court having occasion closely to consider the capacity of National Guard technicians has determined that capacity to be irreducibly military in nature." *Id.* (citations omitted). The First Circuit likewise determined that "such positions are themselves military in nature." *Id.* at 588–89. The court held that the technician's "dual aspects are inseparable," and accordingly, "appellant necessarily suffered the injury of which he complains in his military capacity." *Id.* at 589, 591.

The Sixth Circuit reached the same conclusion in two published decisions. In *Leistiko v. Stone*, a Rehabilitation Act[2] case brought by a dual status technician, the court concluded that the capacity of dual status technicians was "irreducibly military in nature." 134 F.3d 817, 820–21 (6th Cir.1998) (per cu-

riam). The Sixth Circuit revisited the issue in *Fisher v. Peters*, 249 F.3d 433 (6th Cir. 2001), a gender-based Title VII action brought by a dual status technician. The court held that plaintiff's claim was nonjusticiable "because she is a National Guard technician and, thus, her position is irreducibly military in nature." *Id.* at 443.

These cases all hold that dual status technicians are necessarily "military" and, therefore, do not enjoy statutory rights that are available only to "civilian" employees. Under these cases, the Court need only know that plaintiff is a dual status technician to be able to conclude that she has no rights under the Equal Pay Act.

### B. Even Under Case Law Suggesting That Some Matters Involving Dual Status Technicians Could Be "Civilian," Plaintiff's Claim is Military

Some courts have held that matters involving dual status technicians, while almost always military in nature, could theoretically be civilian. The Ninth Circuit held that "Title VII coverage of civilians employed by the military encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure." *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir.1995); *see also Fisher*, 249 F.3d at 441–42 (discussing *Mier*). In *Mier*, the Ninth Circuit affirmed the trial court's dismissal of the complaint for lack of subject matter jurisdiction and failure to state a claim. 57 F.3d at 748. Plaintiff, a dual status technician, alleged discrimination based on race, color, and national origin in violation of Title VII and retaliation for filing a discrimination complaint. *Id.* The court discussed the broad range of personnel actions that courts could not consider because judicial consideration would intrude on military matters. *Id.* at 749–50. Those included matters that relate to enlistment, transfer, promotion, suspension and discharge or that otherwise involve the military "hierarchy." *Id.* Such matters are viewed by the court as "integrally related to the military's unique

---

**2.** The Leistiko trial court held that the Rehabilitation Act applied to civilian but not to military employees of the armed forces. *Leistiko v. Sec'y*

*of the Army*, 922 F.Supp. 66, 75 (N.D.Ohio 1996), *aff'd sub nom, Leistiko v. Stone*, 134 F.3d 817.

structure." *Id.* at 751. The court also held that plaintiff's retaliation claim could not stand "because the retaliatory acts are all integrally related to the military's structure." *Id.*

The Fifth Circuit, in *Brown v. United States*, 227 F.3d 295 (5th Cir.2000), addressed a racial discrimination claim under Title VII by a dual status technician. Plaintiff, after filing an informal grievance, was twice transferred and subsequently discharged. *Id.* at 297. The court found that the actions complained of, while having a civilian component, were actions "taken within the military sphere." *Id.* at 299. The court viewed the claims as involving "intrusion into military personnel decisions," and for that reason, the court could not adjudicate the merits of plaintiff's action. *Id.*

*Fisher v. Peters*, 249 F.3d 433, discussed *supra* Part IV.A, involved Title VII claims of gender-based discrimination and retaliation for filing administrative charges of discrimination. The Sixth Circuit, having first held that plaintiff's position as a dual status technician was "irreducibly" military, 249 F.3d at 443, went on to opine that, even if the *Mier* formulation was applicable, the court could not address the merits of the lawsuit. *Id.* The court concluded that, since plaintiff was challenging a job appraisal by her "immediate supervisors," the challenged action was "integrally military," and thus, the court should not consider the action. *Id.* at 443–44.

Plaintiff relies on two cases cited in the *Mier* decision, *Bledsoe v. Webb*, 839 F.2d 1357 (9th Cir.1988), and *Lutz v. Secretary of the Air Force*, 944 F.2d 1477 (9th Cir.1991), in support of her contention that she can pursue her Equal Pay Act claim despite being a dual status technician. Those two cases are distinguishable from the instant case.

In *Bledsoe*, a female *civilian* employee of the Navy brought a Title VII claim in which she alleged that she had been denied berth on a naval vessel based solely upon her gender. 839 F.2d at 1358. The court, in ad-

dressing whether Bledsoe's claims should be dismissed on the ground that the commanding officer's decision was inherently military and thus nonjusticiable, specifically found that Bledsoe was "neither a member of the armed forces nor an applicant for enlistment in the armed forces." *Id.* at 1359. In fact, Bledsoe's "civilian status [was] not contested." *Id.* The Ninth Circuit found the case to be justiciable "since the plaintiff is not a member of the 'military services' and since no policy or function is implicated which is unmistakably military in nature." *Id.* at 1360.

In *Lutz*, a former Air Force major sued the Air Force and two sergeants who broke into her office after hours, opened her private mail, and disseminated it in an attempt to ruin her reputation. 944 F.2d at 1478. The sergeants' actions did not implicate military decision making or relate to the military mission. *Id.* at 1484. Rather, the case involved subordinates who had a personal vendetta against a superior. *Id.* The Ninth Circuit found that plaintiff's *Bivens* [3] claim could proceed because the alleged injury was not "incident to military service." *Id.*

Plaintiff urges the Court to adopt the Eleventh Circuit's "incident to service" test set forth in *Speigner v. Alexander*, 248 F.3d 1292 (11th Cir.2001), and *Whitley v. United States*, 170 F.3d 1061 (11th Cir.1999). In *Speigner*, a former Alabama National Guard Officer brought a claim alleging racial discrimination under 42 U.S.C. §§ 1981, 1983, and 1985. 248 F.3d at 1293–94. In *Whitley*, the parents and estate of a foreign serviceman sued under the Federal Tort Claims Act claiming that the serviceman's death in a vehicle accident was proximately caused by the negligence of the United States soldier driving a van provided by the Army to transport the rugby team of which the serviceman was a member to and from a civilian rugby match. 170 F.3d at 1067. In determining whether the respective plaintiffs could bring a claim, the court applied a three-part test to determine whether the injury was "incident to service." *Speigner*, 248 F.3d at 1298;

---

3. A *Bivens* claim is an action for damages against federal officials alleged to have violated a citizen's constitutional rights. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

*Whitley,* 170 F.3d at 1070–75. The court considered: "(1) the duty status of the service member, (2) the place where the injury occurred, and (3) the activity the serviceman was engaged in at the time of the injury." *Speigner,* 248 F.3d at 1298; *see also Whitley,* 170 F.3d at 1070. The stated rationale for this test is to "separate cases that may interfere with military discipline and command decision from those that do not." *Speigner,* 248 F.3d at 1298.

Neither of the Eleventh Circuit cases relied on by plaintiff deal with the issue of a dual status technician, nor do they involve claims under Title VII or another statute limited to "civilian" employees. Furthermore, the facts are sufficiently distinguishable so as to render the cases inapposite. Speigner was an active duty officer, not a dual status technician. The injury took place at a formal review and was sustained as a result of that review. 248 F.3d at 1298. The court, therefore, found that the injury was incident to service. *Id.* In *Whitley,* the serviceman was off duty, engaged in a civilian activity, not wearing his uniform or dog tags, and killed on a public highway in Georgia. 170 F.3d at 1072. At the time of his fatal accident, Lieutenant Whitley was traveling with his rugby teammates, including civilians. Neither Whitley nor his team members were subject to the supervision or command of the Army. Participation in the rugby tour was purely voluntary for the military and civilian members, and the rugby game was a recreational event, not a military exercise. *Id.* at 1075. In the circumstances of that case, the court found that Whitley's injuries were not incident to service. *Id.*

■ This Court need not choose between the two approaches discussed above because Major Jentoft's allegations are all "integrally military," "within the military sphere," or "incident to service." She alleges that her superiors broke promises they made while recruiting her, Compl. ¶¶ 16, 18, that

her superiors repeatedly and willfully discriminated against her in compensation because of her gender, Compl. ¶ 33, and that her supervisors retaliated against her because of her complaints by giving her negative evaluations as part of a scheme to terminate her employment, Compl. ¶¶ 19–24, 37. The cases discussed make clear that the actions of which she complains are either identical, or analogous, to the types of complaints concerning recruitment, promotion, evaluation, termination and retaliation that the courts have held to be clearly military. Because plaintiff's claim is "military," she cannot maintain an action under the Equal Pay Act, which provides for actions only by "civilian" employees of military departments. Accordingly, defendant is entitled to summary judgment regarding the claim set forth in Count III of plaintiff's complaint.[4]

## C. National Guard Regulation 690–600 § 8–10 Does Not Alter The Analysis

■ Plaintiff argues that National Guard regulation 690–600 § 8–10 provides a basis for her claim under the Equal Pay Act. Pl.'s Resp. at 5. The National Guard regulation upon which plaintiff relies states that "civilian" technician employees of the military may file civil actions under the Equal Pay Act. The National Guard regulation is entirely consistent with the Equal Pay Act. The regulation is an instructional document; it informs civilian technicians how they may file complaints under several statutes and have those complaints processed and adjudicated.

One appellate court has described the regulation as confusing and misleading, at least as it relates to dual status technicians. The United States Court of Appeals for the Sixth Circuit addressed National Guard regulation 690–600 in *Fisher,* 249 F.3d at 436. The case, discussed *supra* Parts IV.A and IV.B, involved a dual status technician who complained of gender-based discrimination and sought relief under Title VII of the Civil

---

4. Even if the Court had subject matter jurisdiction over plaintiff's FLSA claim for retaliation set forth in Count IV, that claim would fail under RCFC 12(b)(6) for the same reasons plaintiff's Equal Pay Act claim fails. The case law states that the position of dual status technicians is always irreducibly military. *Fisher,* 249 F.3d at

439; *Wright,* 5 F.3d at 589. Alternatively, case law holds that claims for retaliation of the type set forth in Count IV are military in nature, *Fisher,* 249 F.3d at 443; *Brown,* 227 F.3d at 299; *Mier,* 57 F.3d at 751. Under either rationale, plaintiff would be unable to maintain her retaliation claim against defendant under the FLSA.

Rights Act of 1964. After three different individuals advised plaintiff to seek a civilian remedy, the technician, relying on the regulation, made the mistake of seeking relief through the civilian rather than the military system. *Id.* at 436–37. The court, which found that the plaintiff did not have a claim under Title VII, noted that the technician's confusion was understandable because the regulation was "misleading" in that it suggested that dual status technicians should seek relief through the civilian system. *Id.* at 437.

■ While it is unfortunate that the regulation is unclear, the "misleading" nature of the regulation is insufficient to provide plaintiff with a right of action. Even if the National Guard regulation is read to conflict with the Equal Pay Act, the Equal Pay Act would prevail; regulations that are inconsistent with law are void. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) ("The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.'" (citations omitted)); *K.R. v. Anderson Cmty. Sch. Corp.,* 81 F.3d 673, 679 (7th Cir.1996), *vacated,* 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997), *rev'd on other grounds,* 125 F.3d 1017 (7th Cir.1997).

### CONCLUSION

For the reasons set forth above, defendant's Motion to Dismiss, evaluated, with respect to Count III, as a motion for summary judgment, is GRANTED. The claim set forth in Count III of plaintiff's complaint shall be dismissed pursuant to RCFC 12(b)(6). The claim set forth in Count IV of plaintiff's complaint shall be dismissed pursuant to RCFC 12(b)(1). The Clerk is directed to enter judgment consistent with this Opinion and Order.

IT IS SO ORDERED.