# United States Court of Appeals for the Federal Circuit

05-5125

HEIDI A. JENTOFT,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Michael O. Crain, Crain & Davis, LLC, of Athens, Georgia, argued for plaintiff-appellant. With him on the brief was Kesler T. Roberts, of Athens, Georgia.

Thomas D. Dinackus, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge George W. Miller

# United States Court of Appeals for the Federal Circuit

05-5125

HEIDI A. JENTOFT,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  May 8, 2006

_____

Before LOURIE, GAJARSA, and DYK, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Heidi A. Jentoft, a former dual status National Guard technician, appeals from the decision of the United States Court of Federal Claims (the "Claims Court") granting summary judgment in favor of the government on Jentoft's claim that the government violated the Equal Pay Act, 29 U.S.C. § 206(d).  Jentoft also appeals from the Claims Court's decision dismissing her claim of retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et</u> <u>seq.</u>, for lack of subject matter jurisdiction.  <u>Jentoft v. United States</u>, 64 Fed. Cl. 549 (2005).  Because the Claims Court erred in determining that Jentoft was not a federal civilian employee for purposes of the Equal Pay Act, we vacate and remand the case as it relates to that claim.  We affirm the Claims Court's

decision dismissing Jentoft's retaliation claim under the FLSA for lack of subject matter jurisdiction.

## BACKGROUND

As we have previously recognized, "[t]he national guard is the successor to state militias of the nation's early years, and thus is a deeply embedded feature of our national defense system." Singleton v. Merit Sys. Prot. Bd., 244 F.3d 1331, 1333 (Fed. Cir. 2001). The National Guard is a "hybrid" component of the United States armed forces in that it performs both federal and state functions. Id. During times of national emergencies, the President may mobilize the National Guard, putting it in federal duty status and making its members available for military duties normally assigned to the active armed forces and armed forces reserves. During non-emergency times, the National Guard is led by the state adjutants general. The state adjutants general answer to the governors of their respective states, who in turn, have the authority to call upon members of the National Guard in times of domestic emergencies or need.

The National Guard employs technicians for certain civilian duties, including the administration and training of the National Guard and the maintenance and repair of supplies issued to the National Guard or the armed forces. 32 U.S.C. § 709(a) (2000). In that respect, the National Guard technicians are employees of both the military and of the United States. Id. § 709(e). National Guard technicians are classified as either "dual status" or "non-dual status," with the primary difference being that non-dual status technicians are not members of the National Guard. Dual status technicians are members of the National Guard, hold a military rank, and wear uniforms while

performing their duties. Id. § 709(b). In addition to their civilian duties, dual status technicians perform military training for their unit of the National Guard.

The appellant in this case, Heidi A. Jentoft, worked for the Department of the Army, Georgia National Guard, as a civilian Supervisory Test Pilot from May 20, 2001 until April 5, 2002.[1] According to the complaint, the National Guard, through Colonel Dannis Livingston and Major Anthony Sutter, offered Jentoft a maintenance test pilot retention allowance bonus ("bonus") of approximately $10,000 if she were to accept a position as a National Guard test pilot. Allegedly relying on the bonus offer, Jentoft accepted the position on May 20, 2001, in Windsor, Georgia.

According to the complaint, the bonus was offered to other test pilots working in "substantially similar" positions in the Georgia National Guard. The complaint further alleged that other test pilots, all of whom were males, received the bonus. Only Jentoft, the lone female test pilot in the Georgia National Guard, did not receive the bonus that Livingston and Sutter promised her. On or about September 2001, Jentoft alleged that she informed Livingston and Sutter of her concern that she did not receive the bonus because she was a woman. On or about November 20, 2001, Jentoft alleged that she raised the same issue with Colonel Jimmy Davis.

---

[1] The issues on appeal were first raised in the government's motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and a motion to dismiss for failure to state a claim under RCFC 12(b)(6). The Claims Court purported not to have considered any background facts other than those contained in Jentoft's complaint to reach its decision. Accordingly, we will also take the background facts of this case from Jentoft's complaint only and accept all allegations contained therein as true for purposes of this appeal. Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998) (In reviewing a motion to dismiss that has been granted, we will accept all factual allegations contained in the complaint as true).

Once Jentoft informed her superiors, Livingston, Sutter, and Davis, of her concern regarding the bonus, the complaint alleged that she began receiving unwarranted negative performance evaluations and false accusations regarding her ability as a technician in the Georgia National Guard. The complaint contrasted this treatment with the excellent performance evaluations that Jentoft purportedly had received before she raised the bonus issue. Jentoft also alleged that after raising the bonus issue, Sutter informed her that, although he did not want to, he was ordered to instigate the unwarranted and untrue negative evaluations. Jentoft was subsequently terminated from her position effective April 5, 2002.

Jentoft filed her complaint on July 31, 2003. In the complaint, Jentoft accused the government of violating her rights under the Equal Pay Act, 29 U.S.C. § 206(d), by discriminating among employees on the basis of sex. Specifically, the complaint averred that Jentoft, a woman, was paid less than male employees "in the same establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." In addition, Jentoft claimed that Livingston, Davis, and Sutter terminated her employment in retaliation for her opposition to what she perceived were unlawful employment practices.[2] On May 4, 2004, the government filed a motion to dismiss Jentoft's claims under the Equal Pay Act and the FLSA. In the event that the Claims Court considered evidence or facts not contained in the complaint to decide the motion to dismiss, the

---

[2] Jentoft's complaint also contained a claim of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). On April 5, 2004, Jentoft filed an unopposed motion to dismiss that claim, which the court granted on April 8, 2004.

government requested that the motion to dismiss be converted into a motion for summary judgment under RCFC 56.

In granting summary judgment that the government did not violate the Equal Pay Act, the Claims Court first addressed whether Jentoft, a dual status technician, was a "civilian" employee, as required by the statute, or whether her technician position was "irreducibly military such that [Jentoft] would be unable to maintain a claim under the Equal Pay Act." Jentoft, 64 Fed. Cl. at 553. According to the court, whether a dual status technician could be considered a "civilian" employee for purposes of the Equal Pay Act was a question of first impression that the circuit courts had not previously addressed. Id. The court noted, however, that the circuit courts, not including this court, had addressed whether a dual status technician was a "civilian" employee for purposes of other statutes prohibiting discrimination, e.g., Title VII, 42 U.S.C. § 2000e-16(a). Jentoft, 64 Fed. Cl. at 553.

In determining whether dual status technicians were "civilian" employees for purposes of discrimination statutes, the Claims Court examined two approaches that were taken by the circuit courts. Id. at 553-54. The First and Sixth Circuits, according to the Claims Court, held that "the capacity of dual status technicians was 'irreducibly military in nature.'" Id. at 554 (citing Leistiko v. Stone, 134 F.3d 817, 820-21 (1998)). Thus, in those circuits, the court determined, "dual status technicians are necessarily 'military' and, therefore, do not enjoy statutory rights that are available only to 'civilian' employees," including rights under the Equal Pay Act. Id. According to the court, the Fifth and Ninth Circuits, however, "held that matters involving dual status technicians, while almost always military in nature, could theoretically be civilian." Id. Nonetheless,

the Claims Court noted that those circuits held that courts cannot consider "matters that relate to enlistment, transfer, promotion, suspension and discharge or that otherwise involve the military 'hierarchy.'" Id.

The Claims Court concluded that, under either approach, Jentoft's claim that the government violated the Equal Pay Act was not justiciable because the discriminatory acts on which she based her claim were "integrally military," "within the military sphere," or "incident to service." Id. at 556. Specifically, the court determined that the acts that Jentoft pled in order to support her claim, viz., that superior officers broke their promise to her regarding a recruitment bonus, that they willfully discriminated against her in compensation on the basis of gender, and that she was retaliated against because of her complaints, were "either identical, or analogous, to the types of complaints concerning recruitment, promotion, evaluation, termination and retaliation that the courts have held to be clearly military." Id. Thus, even applying the more flexible standard of the Fifth and Ninth Circuits, the Claims Court concluded that Jentoft's claim was "military," and granted summary judgment denying Jentoft's claim under the Equal Pay Act. Id.

In addition to granting summary judgment on the Equal Pay Act claim, the Claims Court also dismissed for lack of jurisdiction Jentoft's claim that she was terminated in "retaliation for [her] complaints and opposition to what she reasonably believed to be unlawful employment practices and gender-based pay discrimination." Id. at 552. The Court noted that its subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), does not extend to claims against the United States "sounding in tort." Id. (citing Qualls v. United States, 678 F.2d 190, 193 (Cl. Ct. 1982); Henrichs v. United

<u>States</u>, 27 Fed. Cl. 669, 661 (1993)). According to the court, its precedent has unambiguously held that retaliation claims "sound in tort," and thus that it had no subject matter jurisdiction over Jentoft's claim. <u>Id.</u>

Jentoft timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

Whether the Court of Federal Claims properly dismissed Jentoft's complaint for lack of jurisdiction or for failure to state a claim upon which relief can be granted are both questions of law that we review <u>de</u> <u>novo</u>. <u>See</u> <u>Moyer v. United States</u>, 190 F.3d 1314, 1317-18 (Fed. Cir. 1999); <u>New York Life Ins. Co. v. United States</u>, 190 F.3d 1372, 1377 (Fed. Cir. 1999). We also review <u>de</u> <u>novo</u> the Claims Court's grant of summary judgment. <u>Alves v. United States</u>, 133 F.3d 1454, 1456 (Fed. Cir. 1998). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." RCFC 56(c).

On appeal, Jentoft argues that the Claims Court should not have denied her claim under the Equal Pay Act. According to Jentoft, the "crux" of her Equal Pay Act claim was that, because she is a woman, the government refused to pay her the signing bonus that it "promised" her. In determining that she was not a civilian employee for purposes of this case, and thus did not have rights under the Equal Pay Act, Jentoft asserts that the court created a distinction between military and non-military technicians that does not exist under the National Guard Technician Act of 1968, 32 U.S.C. § 709. To support her position, Jentoft points to language contained in 10 U.S.C. § 10216(a), which states that "a military technician (dual status) is a Federal civilian employee."

Jentoft argues that that statutory provision conclusively establishes that she was a federal civilian employee, and thus that her claim under the Equal Pay Act was justiciable.

Nonetheless, even if we were to determine that Congress did not intend that dual status technicians always be treated as civilian employees for purposes of the FLSA, which includes the Equal Pay Act, Jentoft asserts that the Claims Court erred in concluding, as a matter of law, that a dual status technician's position was "irreducibly military," and that under the <u>Feres</u> doctrine, she was barred from bringing her claim. According to Jentoft, whether her claim involves a "military" decision, and thereby invokes the <u>Feres</u> doctrine, is a question of fact that should not have been decided on the government's Rule 12 motion. Instead, Jentoft submits that the court should have "looked to the specific facts of the personnel action at issue," which could only take place after discovery is conducted and a factual record is compiled.

Jentoft also asserts that the court improperly dismissed her claim of retaliation under the FLSA as a claim "sounding in tort." Jentoft does not challenge the Claims Court's recognition that our precedent holds that a claim of retaliation pursuant to the FLSA "sounds in tort," but rather she advocates that because those decisions did not explain how a claim of retaliation "sounds in tort," we should not follow them. According to Jentoft, the Claims Court's jurisdictional statute, the Tucker Act, requires that the court hear cases on "any claim founded either upon the Constitution, or any Act of Congress," and Jentoft's retaliation claim, provided for under 29 U.S.C. §§ 215(a)(3) and 216(b), is founded upon an act of Congress. Thus, Jentoft contends that the court had jurisdiction to hear her retaliation claim. In the alternative, if we were to affirm the

Claims Court's dismissal of the retaliation claim, Jentoft requests in a single conclusory sentence at the end of her brief that we transfer the claim to "an appropriate district court" pursuant to 28 U.S.C. § 1631.

The government counters that Congress, in the National Guard Technician Act, did not intend to make dual status technicians civilian employees of the federal government for all purposes, including the right to bring suit under the Equal Pay Act. Relying primarily on American Federation of Government Employees v. Federal Labor Relations Authority, 730 F.2d 1534 (D.C. Cir. 1984), the government contends that National Guard technicians have historically been considered employees of the various states, but that the National Guard Technician Act made them federal civilian employees for the limited purpose of providing them with federal fringe and retirement benefits and coverage under the Federal Tort Claims Act. The government also asserts that Congress intended that dual status technicians, who it claims constituted only about 8% of the National Guard, be subject to the same rules that apply to the remaining 92% of the National Guard. Thus, the government argues, dual status technicians are "in reality" members of the military and that they are not federal civilian employees for purposes of the Equal Pay Act.

The government also contests Jentoft's assertion that the Feres doctrine would not bar her claim under the Equal Pay Act. According to the government, the acts that Jentoft complains of, viz., denial of a bonus for unlawful reasons, negative performance evaluations, and employment termination, directly implicate the order and discipline of the Georgia National Guard. Furthermore, the government contends that allowing Jentoft's claim to proceed would risk damaging the efficiency of the National Guard.

Thus, the government urges that the <u>Feres</u> doctrine does apply here. The government also argues that there was no need for the Claims Court to conduct fact discovery in order to determine whether Jentoft's position with the National Guard was "irreducibly military," and thereby implicate the <u>Feres</u> doctrine. According to the government, fact discovery was unnecessary because the court could base its conclusion that Jentoft's position was "irreducibly military" on the "inherent nature" of the dual status technician position and the allegations contained in her complaint.

The government further asserts that the Claims Court properly dismissed Jentoft's retaliation claim for lack of jurisdiction. The government argues that the Claims Court's jurisdictional statute, the Tucker Act, is limited to "cases not sounding in tort," and that our predecessor court, the Court of Claims, had held that a claim for retaliation pursuant to § 215(a)(3) "sounds in tort." Moreover, the government contends that the Court of Claims did provide adequate reasoning to support its decisions that a claim for retaliation "sounds in tort," and that we should follow those decisions. Finally, the government takes issue with Jentoft's characterization of the Claims Court's jurisdictional statute, which omits the language of the Tucker Act stating "in cases not sounding in tort." According to the government, Jentoft's interpretation of the Tucker Act would read out the phrase "in cases not sounding in tort" out of that statute, which is impermissible.

We agree with Jentoft that the Claims Court erred in denying her claim under the Equal Pay Act. The Equal Pay Act, 29 U.S.C. § 216(d)(1), in pertinent part, provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such

05-5125                                    -10-

> establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

Moreover, an employee, for purposes of § 216, can be "any individual employed by the Government of the United States . . . as a civilian in the military departments (as defined in section 102 of Title 5)." Id. § 203(3)(2)(A)(i). Thus, under the plain language of the Equal Pay Act, Jentoft has a justiciable claim against the government provided that she is a qualified employee, viz., a federal civilian employee. See NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1314-15 (2005) (In interpreting a statute, "we 'give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.'" (citing Williams v. Taylor, 529 U.S. 420, 431 (2000)).

As an initial matter, we note that neither party on appeal contests that Jentoft was a dual status National Guard technician. Both the National Guard Technician Act and 10 U.S.C. § 10216(a) set forth provisions that characterize and regulate the dual status National Guard technician position. Of particular interest to this appeal is § 709(b), which states that a dual status technician position is "defined" under § 10216(a). Section 10216(a), in turn, provides that "[f]or purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee." (Emphasis added). Notably, there is no language in § 10216(a) limiting the circumstances in which a dual status technician can be considered a federal civilian employee. Thus, the plain language of § 10216(a) makes clear that Jentoft has a

justiciable claim under the Equal Pay Act, and that the Claims Court should not have denied her adjudication of that claim on summary judgment.

In reaching this decision on Jentoft's Equal Pay Act claim, we are mindful that other circuits have dismissed claims arising under other similar discrimination statutes as non-justiciable.  See, e.g., Fisher v. Peters, 249 F.3d 433 (6th Cir. 2001); Brown v. United States, 227 F.3d 295 (5th Cir. 2000); Mier v. Owens, 57 F.3d 747 (9th Cir. 1995); Wright v. Park, 5 F.3d 586 (1st Cir. 1993).  Although Mier and Wright were decided before the current version of § 10216(a) was enacted in 1996, Fisher and Brown, which were decided after 1996, did not discuss the aforementioned language contained in § 10216(a) and the weight of such language in overcoming those courts' justiciability concerns.  In our view, given the broad and unambiguous language contained in § 10216(a), Congress articulated its intention that dual status technicians be treated in the same manner as other federal civilian employees, including having rights under the Equal Pay Act.  Given this clear direction from Congress, we must follow it.  See Chappell v. Wallace, 462 U.S. 296, 304 (1983) (stating that Congress is the constitutionally authorized source of authority over the military system of justice). Moreover, given the plain language of § 10216(a), we have no discretion not to adjudicate Jentoft's rights under the Equal Pay Act, even under the Feres doctrine, which is a judicially-created doctrine.

The so-called Feres doctrine arose from the Supreme Court decision in Feres v. United States, 340 U.S. 135 (1950), which held that the government was not liable under the Federal Tort Claims Act for "injuries to servicemen arising out of or are incident to [military] service."  Id. at 146.  That holding of Feres was later extended

beyond the Tort Claims Act to recognize the "unique relationship between the government and military personnel," and the disruption to that relationship that could result if a "soldier were allowed to hale his superiors into court." Chappell, 462 U.S. at 299, 304. That understanding of Feres, by itself, would seem to preclude a court from adjudicating a claim brought by a dual status technician such as Jentoft against the government based on acts that were incident to her military service. However, the Feres case, just as those from the First and Ninth Circuits, was decided before § 10216(a) was enacted and therefore did not consider the impact of that statute. Thus, we are enjoined to give priority to the statutory enactment of Congress over decisions that preceded it.

We agree with the Claims Court, however, that it lacked subject matter jurisdiction to consider Jentoft's retaliation claim. It is well established that the Claims Court is a court of limited jurisdiction, pursuant to the Tucker Act. United States v. King, 395 U.S. 1, 3 (1969). It is also equally well settled that the government has sovereign immunity from lawsuits, and waiver of that immunity "cannot be implied but must be unequivocally expressed." Id. at 4. Given that legal standard, it is clear that, to the extent Jentoft's retaliation claim "sounds in tort," the government has not waived its sovereign immunity in the Claims Court and that court does not have jurisdiction to hear the claim. In stating that "to the extent that plaintiff charges [the government] with acting in a discriminatory or retaliatory manner towards him, such allegations are tortious in nature . . . and are not actionable in [the Court of Claims]," our precedent has addressed whether Jentoft's retaliation claim "sounds in tort" and whether the Claims Court has jurisdiction over that claim. Qualls v. United States, 678 F.2d 190, 193 (Ct.

Cl. 1982) (citing <u>Eastport S.S. Corp. v. United States</u>, 372 F.2d 1002, 1010 (Ct. Cl. 1967)). Despite Jentoft's request to do otherwise, we must follow our precedent.

We also deny Jentoft's request contained in a single sentence at the end of her brief that we transfer her retaliation claim to an "appropriate District Court pursuant to 28 U.S.C. § 1631." Under § 1631, if the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought." In her request for transfer, Jentoft has not articulated how "it is in the interest of justice" to transfer her action to another court. Nor has she identified another court where her action "could have been brought." Moreover, the question remains whether there is a district court of competent jurisdiction at all. Jentoft's complaint alleges that the government retaliated against her by, <u>inter alia</u>, terminating her employment. Issues relating to employment and termination decisions for the National Guard, however, normally reside with the state adjutant general, not the federal courts. 32 U.S.C. § 709(f). In any event, given the conclusory nature of Jentoft's request, we find no basis to grant it.

## CONCLUSION

We affirm the Claims Court's decision dismissing Jentoft's claim of retaliation under the FLSA for lack of subject matter jurisdiction. We vacate the Claims Court's decision denying Jentoft's claim under the Equal Pay Act, and remand for further proceedings consistent with this opinion.

<u>AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED</u>